# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
### Case No.: 1:24-cv-23359-KMW

UNITED INVESTOR COMMUNITY,
INC., LYADUNNI UDUGBA
OLUNGBENGA BERNARD ADESUYI
Individually and on behalf of all others
similarly situated).

     Plaintiff,

v.

OMEGAPRO FOREX TRADING, LTD
GO-GLOBAL, LTD
HIS HIGHNESS SHEIKH HAMDAN
BIN MOHAMMED BIN RASHID
AL MAKTOUM (CROWN PRINCE
OF DUBAI)
UNITED ARAB EMIRATE
CITY OF DUBAI
BROKER GROUP, LTD
PULSE WORLD
SZAKACS ANDREAS ATTILA
NEVZAT DIKMEN
RIITTA DIKMEN
DILAWARJIT SINGH
NADER POORDELJOO
PAULO TUYNMAN
JUAN CARLOS REYNOSO SR.
MICHAEL SHANNON SIMS
OMEGA WORLD, LTD
NEPTUNE TRADE, LTD
OMP MONEY, LTD
OMP EXCHANGE
MELDI CHERIF
MICHAEL LETYNSKI
ROBERT VELGHE
KONSTANTIN IGNATOV
BOGDAN S. BARBU
ZXN INVESTMENT HOLDING, LTD
STEPHANE PLANTE
NICK LEMAY
JOHN BELFORT
ERIC THOMAS

1

JOHN C. MAXWELL
CHRISTOPHER HAMILTON
ONE COIN
RUJA IGNATOVA
PAULO TUYMAN
OMNIA TECH
RODRIGUES SODANSOU
LAURENT LOUIS
ALI KHALIL
ERIC WORRE
MARINA WORRE
JORDAN ROSS BELFORT
STEVEN SEAGAL
TRADERS DOMAIN FOREX, LTD
MARCUS TODD BRISCO
ALGO CAPITAL, LLC
YAS CASTELLUM, LLC
YAS CASTELLUM FINANCIAL, LLC
TIN QUOC TRAN
FRANCISCO DAVID STORY
SAEG CAPITAL MANAGEMENT
FREDERICK "TED" SAFRANKO AKA
TEDDY JOSEPH SAFRANKO
ROBERT D. COLLAZO JR.
JUAN HERMAN
JORGE SALCEDO
ROBERT COLLAZO JR.,
JUAN HERMAN
JULIO CESAR CRUZ
JULIAN CRUZ
HOLTON BUGGS
JOHN DOE 1 TO 1,000

_____  Defendant.
_____

## <u>DEFENDANT JORDAN ROSS BELFORT'S MOTION TO DISMISS</u>
## <u>(HEARING REQUESTED)</u>

COMES NOW, Defendant Jordan Ross Belfort, by and through his counsel of record Ellyn S. Garofalo of Liner Freedman Taitelman + Cooley LLP and Lee Stapleton of Carlton Fields PA, to hereby file his Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state a claim under federal or Florida law and for failing to meet the pleading requirements of Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure.

This Motion to Dismiss is made and based upon the this notice of motion and motion, the pleadings and files on record in this matter, the attached Memorandum of Points and Authorities and any oral argument or evidence which may be presented at the hearing on this matter.

DATED this 16th day of October, 2024.

Respectfully submitted,

/s/ *Lee Stapleton*

Lee Stapleton (FBN 356778)
lstapleton@carltonfields.com
CARLTON FIELDS, P.A
700 NW 1st Avenue, Ste 1200
Miami, FL  33136
Telephone: (305) 530-0050
Facsimile:  (305) 530-0055


Ellyn S. Garofalo (admitted *pro hac vice*)
(California SBN 158795)
egarofalo@ftllp.com
LINER FREEDMAN TAITELMAN +
COOLEY, LLP
1801 Century Park West, 5th Floor
Los Angeles, CA  90067
Telephone: (310) 201-0005
Facsimile:  (310) 201-0045
*Attorneys for Defendant, Jordan Ross Belfort*

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 8

II. FACTUAL BACKGROUND AND PROCEDURAL BACKGROUND ........................... 9

    A. The Ponzi Scheme Alleged in the Complaint. ......................................................... 9

    B. The Scant Allegations Against "Jordan" and "John" Belfort. ................................. 9

III. THE STANDARD FOR DISMISSAL UNDER RULE 12(b)(6) ................................... 11

IV. THE COMPLAINT FAILS TO STATE PLAUSIBLE FEDERAL OR STATE RICO CLAIMS AGAINST BELFORT (COUNTS 1-4, 12-15) ................................................. 12

V. PLAINTIFFS' STATE SECURITIES FRAUD CLAIMS ARE INADEQUATELY PLEADED (COUNTS 20-22) ........................................................................................ 16

VI. THE COMPLAINT FAILS TO PLEAD COMMON LAW FRAUD CLAIMS AGAINST BELFORT UNDER FLORIDA LAW ............................................................................ 17

    A. Plaintiffs' Fail to Plead Common Law Fraud with the Requisite Specificity (Counts 9 - 10) ..... 17

    B. Plaintiffs Fail to Plead a Claim for Aiding and Abetting Fraud Against Belfort with the Requisite Specificity (Count 26). ........................................................................ 19

    C. Plaintiffs Fail to Plead a Claim for Civil Conspiracy to Commit Fraud Under Florida Law (Count 11) ................................................................................................. 20

VII. PLAINTIFFS FAIL TO STATE A CLAIM FOR CONVERSION / THEFT / EMBEZZLEMENT (COUNT 8) .................................................................................. 20

VIII. PLAINTIFFS' FRAUDULENT CONVEYANCE CLAIM FAILS AS TO BELFORT (COUNT 19) ................................................................................................................. 21

IX. THE COMPLAINT FAILS TO STATE FLORIDA COMMON LAW CLAIMS AGAINST BELFORT ....................................................................................................... 22

    A. Plaintiffs Fail to State Claims for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing Against Belfort (Counts 5 - 6) ........... 22

    B. Plaintiffs Fail to Plead Claims for Intentional and Negligent Infliction of Emotional Distress (Counts 16-17). ....................................................................... 23

    C. Plaintiffs Fail to Plead That Belfort Was Unjustly Enriched (Count 7) ............... 23

X. CONCLUSION ............................................................................................................. 23

XI. REQUEST FOR HEARING ......................................................................................... 24

XII. NO MEET AND CONFER REQUIREMENT ............................................................. 24

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Am. Dental Ass'n v. Cigna Corp.*,
    605 F.3d 1283 (11th Cir. 2010) ................................................................................... *passim*

*Am. United Life Ins. Co. v. Martinez*,
    480 F.3d 1043 (11th Cir. 2007) ...................................................................................14

*Aquino v. Mobis Alabama, LLC*,
    No. 3:22-CV-145-TCB, 2024 WL 2764047 (N.D. Ga. May 28, 2024) ...........................13, 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .....................................................................................................16

*Bankers Mut. Capital Corp. v. U.S. Fid. & Guar. Co.*,
    784 So.2d 485 (Fla. 4th DCA 2001) .............................................................................13

*Beal Bank SSB v. Almand & Assocs.*,
    780 So.2d 45 (Fla.2001) ..............................................................................................22

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..........................................................................................11, 14, 16

*Bill Buck Chevrolet, Inc. v. GTE Florida, Inc.*,
    54 F. Supp. 2d 1127 (M.D. Fla. 1999) ..........................................................................13

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
    116 F.3d 1364 (11th Cir. 1997) ...................................................................................14

*Carnell Const. Corp. v. Danville Redevelop. & Housing Authority*,
    745 F.3d 703 (4th Cir. 2014) ......................................................................................12

*Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc.*,
    79 So. 3d 855 (Fla. Dist. Ct. App. 2012) .............................................................13, 19, 20

*EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, NA*,
    467 F.3d 466 (5th Cir. 2006) ......................................................................................12

*Gen. Elec. Co. v. Chuly Int'l, LLC*,
    118 So. 3d 325 (Fla. Dist. Ct. App. 2013) .....................................................................21

*Gilison v. Flagler Bank*,
    303 So. 3d 999 (Fla. Dist. Ct. App. 2020) .....................................................................19

*Hart v. United States*,
894 F.2d 1539 (11th Cir.1990) .................................................................................23

*Howard v. Murray*,
184 So. 3d 1155 (Fla. Dist. Ct. App. 2015) ...........................................................21

*Ingram v. Butter*,
No. 1421392CIVWILLIAMS, 2015 WL 9911314 (S.D. Fla. Dec. 23, 2015) .................22, 23

*Jacob v. Mentor Worldwide, LLC*,
40 F.4th 1329 (11th Cir. 2022) ...............................................................................11

*Klayman v. Judicial Watch, Inc.*,
22 F. Supp. 3d 1240 (S.D. Fla. 2014) ....................................................................23

*Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*,
781 F.3d 1245 (11th Cir. 2015) ..............................................................................12

*Philippeaux v. Miami Apartments Invs., LLC*,
No. 22-11692, 2023 WL 2989831 (11th Cir. 2023) ...............................................11

*Raimi v. Furlong*,
702 So.2d 1273 (Fla. 3d DCA 1997) .......................................................................20

*Simon v. Celebration Co.*,
883 So.2d 826 (Fla. 5th DCA 2004) .......................................................................19

*State v. Mark Marks, P.A.*,
654 So.2d 1184 (Fla. 4th DCA 1995) .....................................................................18

*State v. Siegel*,
778 So. 2d 426 (Fla. Dist. Ct. App. 2001) .............................................................20

*Taubenfeld v. Lasko*,
324 So. 3d 529 (Fla. Dist. Ct. App. 2021) .............................................................21

*Townsend v. Morton*,
36 So. 3d 865 (Fla. Dist. Ct. App. 2010) ...............................................................18

*TransPetrol, Ltd. v. Radulovic*,
764 So. 2d 878 (Fla. Dist. Ct. App. 2000) .............................................................18

*United States v. Church*,
955 F.2d 688 (11th Cir. 1992) ................................................................................15

*Wadlington v. Cont'l Med. Servs., Inc.*,
907 So.2d 631 (Fla. 4th DCA 2005)........................................................................18

*World Class Yachts, Inc. v. Murphy,*
   731 So.2d 798 (Fla. 4th DCA 1999) ........................................................................20

*ZP No. 54 Ltd. P'ship v. Fidelity & Deposit Co. of Maryland,*
   917 So. 2d 368 (Fla. 5th DCA 2005) ......................................................................19

**Statutes**

18 U.S.C. § 1961 .........................................................................................................12

18 U.S.C § 1962 ...............................................................................................12, 13, 15

18 U.S.C § 1964 .........................................................................................................12

Federal Rule of Civil Prcedure 9(b) ......................................................................... *passim*

Federal Rule of Civil Procedure 8(a) .......................................................9, 11, 17, 23

Federal Rule of Civil Procedure 12(b) ......................................................................11

Fla. R. Civ. P. 1.110(f) ..............................................................................................13

Fla. R. Civ. P. 1.110(f) ..............................................................................................19

Fla. Stat. Ann. § 726.105 ..........................................................................................22

Fla. Stat. Ann. § 772.103 ..........................................................................................13

Fla. Stat. Ann § 772.104(1) .......................................................................................13

Fla. Stat. Ann. § 812.012(3)(d)1 ...............................................................................20

Fla. Stat. Ann. § 812.014(1) ......................................................................................21

I.     <u>**INTRODUCTION**</u>

United Investor Community, Inc.'s Complaint alleges massive, interlocking multi-national Ponzi schemes that allegedly caused billions of dollars in losses by cryptocurrency investors.  The 102-page Complaint casts an extremely wide net, asserting twenty-six counts ranging from federal and state RICO violations to common law fraud and intentional infliction of emotional distress, against approximately fifty individual and corporate Defendants.  This motion is brought on behalf of Defendant Jordan Ross Belfort (misnamed "John Belfort" throughout the Complaint) only.  Although the Complaint asserts specific allegations against the key players in the complex crypto currency transactions, the allegations against Belfort are extremely sparse, confined to conclusory allegations in a mere nine of the Complaint's 575-paragraphs.

The sum and substance of the allegations against Belfort is that the Ponzi entities "used" or "employed" Belfort, along with multiple well-known individuals, to promote cryptocurrency investments.  Plaintiffs do not allege that Belfort had any ownership or management role in the alleged Ponzi entities or any other entity Defendant allegedly involved in the wide-ranging scheme.  The Complaint is devoid of any specific misrepresentation allegedly made by Belfort to any Plaintiff investor or potential investor.  The Complaint does not describe particular conduct by Belfort such as attendance at meetings, participatio8n in calls or indeed any communication with allegedly defrauded investors.  Each of the nine conclusory paragraphs that even mention Belfort, merely lump him together with other Defendants, without distinguishing his conduct from that of the others who allegedly participated in the scheme.

The Complaint fails to identify which of the multitude of entity Defendants "used" Belfort to promote its business.  The Complaint lacks even a specific allegation that Belfort was the beneficiary or intended beneficiary of the allegedly ill-gotten gains generated by the alleged Ponzi scheme or that Belfort was paid for his alleged promotional activities.  There are only the conclusory statements that "Defendants MICHAEL SHANNON SIMS, JOHN BELFORT and others collected tens of millions of dollars from American investors of OMEGAPRO" (Comp., Doc. # 1, ¶ 143) and cryptocurrency was distributed from OmegaPro wallets to "Defendants: Andreas Szakacs, Michael Shannon Sims, John Belfort, Steven Seagal and others either as payouts to investors and bonuses to promoters or for the benefit of Defendants" (*id*., ¶ 193).

Based on these extremely thin, mainly conclusory allegations, Plaintiffs attempt to ensnare Belfort into a vast conspiracy that allegedly caused over $250 billion in damages worldwide.  As shown below, the Complaint fails to meet Rule 9(b)'s heightened pleading standard for fraud, including RICO claims.  In fact, Plaintiffs' allegations are insufficient even to meet Rule 8(a)'s more relaxed pleading standard by giving Belfort fair notice "of what the ... claim is and the grounds upon which it rests," much less plead any plausible claim – federal or state – against Belfort for the hundreds of millions of dollars in damages sought by Plaintiffs.

## II.   FACTUAL BACKGROUND AND PROCEDURAL BACKGROUND

### A.   The Ponzi Scheme Alleged in the Complaint.

The Complaint alleges a massive international pyramid scheme involving cryptocurrency investments with Defendants OmegaPro, Ltd. ("OmegaPro") and GoGlobal, Ltd. ("GoGlobal") over a seven-year period, between January 2017 and January 2024.  The Defendants include a laundry list of individuals and corporate entities that allegedly facilitated the scheme and/or laundered the Ponzi scheme proceeds.  As pertinent to Belfort, Plaintiffs allege in their Introduction that "Defendants also used and/or employed rich, famous and powerful people such as American Actors Steven Seagal, John Belfort from the "Wolf of Wall Street" and the Crowned Prince of Dubai in order to convince people that their investment business is legitimate."  Comp., Doc. # 1, p. 4.

As a preliminary matter, it is not even clear who is the intended Defendant.  The Complaint names both "Jordan Ross Belfort" and "John Belfort" as Defendants.  "Jordan" and "John" are each described as an actor who made his name in the film "Wolf of Wall Street."[1]  It is not clear whether both "Jordan" and "John" are defendants, or whether "John" is "Jordan" and, therefore, there is only one Belfort defendant.  This ambiguity alone requires dismissal.  This, however, is not the only shortcoming in the pleading.  As shown below, the Complaint fails to meet even the most minimal pleading standards under Rule 8(a), much less the heightened pleading requirements of Rule 9(b).

### B.   The Scant Allegations Against "Jordan" and "John" Belfort.

Jordan Belfort is mentioned only once in the 102-page, 575 paragraph Complaint:

---

[1] Jordan Belfort is not an actor.  Rather, he was the key character in "Wolf of Wall Street," portrayed by Leonardo di Caprio.

> "Defendant, JORDAN ROSS BELFORT, aka "The Wolf of Wall Street" is a
> United States Citizen, a very well-known actor who made his name in the movie
> "The Wolf of Wall Street."… At all times hereinafter mentioned, Defendant used
> his fame and status to promote OMEGAPRO and caused hundreds of thousands
> of people to invest in the Ponzi Scheme."

Comp., Doc. # 1, ¶ 64.

John Belfort's name appears nine times in the Complaint. "John" Belfort is listed as a Defendant in the Complaint's caption but is not identified as a "Defendant" in Section I(B) of the Complaint (paragraphs 59-98). Presumably, John Belfort is the same person as Jordan Belfort, named as a party in Paragraph 64 of the Complaint. On the assumption that John and Jordan are the same person, "John" and "Jordan" Belfort are referred to as "Belfort."

The Complaint does not plead any specific conduct by Belfort. Belfort is not alleged to have been a principal, owner or manager of any of the Defendant entities. The Complaint does not allege that Belfort owned or had any interest in cryptocurrency marketed or sold by OmegaPro or GoGlobal. The Complaint is bereft of a single factual allegation that might establish Belfort's participation in, or knowledge of the alleged Ponzi scheme. The Complaint fails even to describe what Belfort allegedly did to promote OmegaPro or its cryptocurrency products to investors. Belfort is not listed as one of the "top promoters" or "ambassadors" of the Complaint who allegedly recruited investors. Id., ¶ 112. The Complaint is devoid of a single fact that might establish that Belfort knew or was on notice that OmegaPro was anything but a legitimate cryptocurrency business.

In short, there are no specific factual allegations of conduct that might give rise to Plaintiffs' claims against Belfort. The vast majority of allegations are stated against "Defendants" as a group. The Complaint's nine mentions of "John" Belfort are confined to conclusory allegations that lump Belfort together with a laundry list of other Defendants, without distinction between them or their conduct. See, e.g., Doc. #1, ¶ 140 (Segal, Sims and Belfort "lured investors by promising profits from trading their cryptocurrency and touting themselves as 'some of the Industry's Top Leading Professionals worldwide.'"); id., ¶ 142 (Sims and Belfort "did not disclose to investors their financial history, including her (sic) personal bankruptcies and money judgment against them."); [2] id., ¶ 143 (Sims, Belfort and others collected tens of millions

---

[2] It is ironic that Plaintiffs allege that Belfort concealed his history while simultaneously pleading that he was the subject of a major motion picture, the "Wolf of Wall Street," which is about

of dollars from investors); *id.*, ¶ 164 ("Defendants" used slide decks and weekly performance provided by the Ponzi entities to recruit investors and Sims, Belfort and Andreas Szakacs repeated the misrepresentations in the slide decks in investor recruiting sessions); *id.*, ¶ 176 (OmegaPro, Shims (sic), Belfort and Worre misrepresented OmegaPro as a licensed investment adviser or financial advisor); *id.*, ¶ 193 (some of a billion dollars' worth of cryptocurrency went to Szakacs, Sims, Belfort, Seagal and others as payouts to investors or bonuses); *id.*, ¶ 277 ("Defendants" concealed their unlawful conduct fraud which "was committed at the instruction of, and through the directions" of Szakacs, Sims, Belfort, Seagal, Eric Thomas, Juan Carlos Reynoso Jr., Dilawarjit Singh, and John Does 1-500.); *id.*, ¶ 481 ("Andrea Szakacs, Michael Shannon Sims, Steven Seagal, Dilawarjit Singh, John Belfort, Nader Poordeljoo, participated in the affairs of OMEGAPRO.")

In sum, the Complaint fails utterly to enlighten on exactly what Belfort – as opposed to others – knew or did that might make him liable to the Ponzi investors. Rather, the gist of the handful of the Complaint's conclusory allegations is that Belfort and other "rich, famous and powerful people" were "used and/or employed" by OmegaPro to convince investors that its crypto currency investments were legitimate when they "*should have* known or had reasons to believe that OMEGAPRO was a Ponzi Scheme designed to defraud people." This is insufficient to meet federal pleadings standards by stating a plausible claim against Belfort.

## III.   THE STANDARD FOR DISMISSAL UNDER RULE 12(b)(6)

To state a claim, Federal Rule of Civil Procedure 8(a)(2)[3] requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *Philippeaux v. Miami Apartments Invs., LLC*, No. 22-11692, 2023 WL 2989831, at *1 (11th Cir. 2023).

Dismissal under Rule 12(b)(6) is appropriate when a plaintiff fails to allege facts sufficient "to raise a right to relief above the speculative level" or fails to "state a claim to relief that is plausible on its face." *Jacob v. Mentor Worldwide, LLC*, 40 F.4th 1329, 1334 (11th Cir.

---

Belfort's history with Stratton Oakmont which ended in a highly publicized securities fraud prosecution. In fact, the Complaint suggests that it was precisely because of this fame that he was allegedly hired to promote the cryptocurrency investments that give rise to this Complaint.
[3] All references are to the Federal Rules of Civil Procedure unless otherwise specified.

2022), *citing Twombly*, *supra*, 550 U.S. at 555–56, 570.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010), *citing Twombly*, *supra*, 550 U.S. at 570.  While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.  *Ibid*.  Thus, the rule that "a court must accept allegations in a complaint as true, is inapplicable to legal conclusions." *Am. Dental Ass'n, supra*, 605 F.3d at 1290, *citing Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

Therefore, in considering motions to dismiss, the district court (1) eliminates allegations that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, assumes their veracity to determine whether they plausibly give rise to an entitlement to relief. *Id.*  Courts may infer from the factual allegations in the complaint "obvious alternative explanation[s]," which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer. *Id. quoting Twombly,* 550 U.S. at 557.

The Complaint here includes a mix of federal and state claims.  Although state law determines whether state claims exist and what defenses are recognized, federal pleading rules apply.  *See Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1260 (11th Cir. 2015); *EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470, fn. 2 (5th Cir. 2006), *see also Carnell Const. Corp. v. Danville Redevelop. & Housing Authority*, 745 F.3d 703, 725-26 (4th Cir. 2014) (FRCP govern procedural requirements for pleading state law special damages claims).

## IV.    THE COMPLAINT FAILS TO STATE PLAUSIBLE FEDERAL OR STATE RICO CLAIMS AGAINST BELFORT (COUNTS 1-4, 12-15)

Counts 1 through 4 are brought under federal RICO statutes.[4]  Counts 1 through 3 apply to participation in the operation or profits of a RICO violation, while Count 4 alleges a RICO conspiracy.  Section 1962(c) of the RICO statutes requires that a plaintiff prove that a defendant

---

[4] Count 1 for participation in a RICO enterprise through a pattern of racketeering activity (18 U.S.C. §§ 1961(5), 1964(C); Counts 2 and 3 for control over a RICO enterprise and use of RICO proceeds RICO claim (18 U.S.C. §§ 1961(5), 1964(B)); Count 4 for conspiracy to engage in a pattern of racketeering (18 U.S.C. §§ 1961(5), 1964(D).)

participated in an illegal enterprise "through a pattern of racketeering activity." 18 U.S.C. §
1962(c).  Counts 12 through 15 allege violations of Florida's equivalent of the federal RICO
statutes, The Florida Civil Remedies for Criminal Practices Act (the "Florida RICO statute").[5]
Like 18 U.S.C. § 1962, Section 772.103 of the Florida RICO statute, makes it unlawful for any
person "[t]hrough a pattern of criminal activity ... to acquire or maintain, directly or indirectly,
any interest in or control of any enterprise or real property," or for a person "[e]mployed by, or
associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise
through a pattern of criminal activity," or to conspire to do so.  *Eagletech Commc'ns, Inc. v. Bryn
Mawr Inv. Grp., Inc.*, 79 So. 3d 855, 864 (Fla. Dist. Ct. App. 2012), *citing* Fla. Stat. Ann. §
772.103; s*ee also Bill Buck Chevrolet, Inc. v. GTE Florida, Inc*., 54 F. Supp. 2d 1127, 1132
(M.D. Fla. 1999), *aff'd by*, 216 F.3d 1092 (11th Cir. 2000) (elements of a RICO civil action are:
(1) violation of 18 U.S.C. § 1962; (2) injury to business or property; and (3) that the violation
caused the alleged injury.)  Section 772.104(1) provides civil remedies for violations of section
772.103. *Eagletech,* 79 So. 3d at 855, 864.

Plaintiffs' state and federal RICO and RICO conspiracy claims are subject to Rule 9(b)'s
heightened pleading standard.[6]  To comport with Rule 9(b), a plaintiff must allege: "(1) the
precise statements, documents, or misrepresentations made; (2) the time, place, and person
responsible for the statement; (3) the content and manner in which these statements misled the
Plaintiffs; and (4) what the defendants gained by the alleged fraud."  *Am Dental Ass'n, supra*,
605 F.3d at 1291, citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1380–
81 (11th Cir. 1997) (applying the requirements to a RICO fraud complaint).  The plaintiff must
allege these facts with respect to each defendant's participation in the fraud.  *Aquino v. Mobis
Alabama, LLC*, No. 3:22-CV-145-TCB, 2024 WL 2764047, at *16 (N.D. Ga. May 28, 2024)**,**
*citing***,** *Am. Dental Ass'n*, 605 F.3d at 1291 ("At the most basic level, Plaintiffs "must allege facts

---

[5] Count 12 for "use of income derived from patterns of racketeering activity in the operation of
an enterprise; Count 13 for conduct or participation in an enterprise through a pattern of
racketeering activity; Count 14 for acquisition and maintenance of an interest in or control over
any enterprise; Count 15 for conspiracy to violate the provisions of the Florida Racketeering Act
*et seq*.
[6] Florida similarly requires specificity in the pleading of fraud claims including who made the
false statement, the substance of the false statement, the time frame in which it was made and the
context in which the statement was made.  Florida Rule of Civil Procedure 1.120(b); *Bankers
Mut. Capital Corp. v. U.S. Fid. & Guar. Co.,* 784 So.2d 485, 490 (Fla. 4th DCA 2001).

with respect to each defendant's participation in the fraud.").

"[F]air notice is perhaps the most basic consideration underlying Rule 9(b)." *Aquino*, supra, 2024 WL 2764047, at *15, quoting *Brooks v. Blue Cross & Blue Shield of Florida, Inc.,* 116 F.3d at 1381. If specific misrepresentations do not exist, the complaint has not alleged a right to relief that is "plausible on its face." *Twombly,* 550 U.S. at 570. In *Am. Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1291–92 (11th Cir. 2010), for instance, the plaintiffs alleged that a dental care insurer made misrepresentation in their on-line advertising, provider agreements and fee schedules. The Court dismissed RICO and RICO conspiracy claims because the plaintiff failed to pinpoint a single specific misrepresentation by defendants regarding how plaintiffs would be compensated and failed to allege how they were misled by the documents, as required by Rule 9(b). In other words, the plaintiffs failed to plead the deceptive conduct necessary for a RICO violation predicated on mail fraud. *See also Am. United Life Ins. Co. v. Martinez,* 480 F.3d 1043, 1065 (11th Cir. 2007) (affirming dismissal of plaintiff's substantive RICO claims where complaint did not allege that defendants made any affirmative misrepresentations in the mailings).

In *Brooks v. Bluecross & Blue Shield of Florida, Inc.,* an amended complaint similarly failed to comport with Rule 9(b) where the pleading was "devoid of specific allegations with respect to the separate Defendants" and merely lumped together all the defendants' actions so that the allegations provided no factual basis upon which the Court could conclude that "any specific act of any specific [d]efendant[ ]" constituted mail or wire fraud. 116 F.3d at 1381; *see also Aquino*, 2024 WL 2764047, at *15.

The Complaint here alleges a complex international scheme which extended over a multi-year period and allegedly involved approximately 50 defendants who either offered and sold the cryptocurrency, laundered the proceeds of the fraud or otherwise engaged in fraudulent conduct which concealed the fraud from the investor class. Rule 9(b) requires Plaintiffs to specifically allege as to each Defendant including Belfort, the precise statements or misrepresentations he made, when and where the misrepresentations were made, the content of the misrepresentation and how they misled Plaintiffs and what Belfort gained by the alleged fraud. *Am Dental,* 605 F.3d at 1291, citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1380–81 (11th Cir.1997) (facts must be alleged as to each defendant's participation in the fraud).

The Complaint does not specifically allege any misrepresentation by Belfort, much less when, where and to whom a misrepresentation was made, or how any class member was misled by a misrepresentation by Belfort.  There is no allegation of what Belfort gained – only conclusory allegations that Belfort and other Defendants were paid for some indefinite purpose. Nor does the Complaint contain a single specific allegation of fraudulent conduct by Belfort or knowledge of any fraudulent conduct by any of the host of Defendants who allegedly participated in the Ponzi scheme.  The Complaint merely lumps Belfort together with other Defendants in conclusory allegations of fraud and gain.

The sum of Plaintiffs' allegations is that Belfort and other "rich, famous and powerful people" were "used and/or employed" to convince investors that the crypto currency investments were legitimate and some of a "billion dollars' worth of cryptocurrency" went to Szakacs, Sims, Belfort, Seagal and others as payouts to investors or bonuses.  Comp., Doc. #1, ¶ 193.  Once these and similarly conclusory allegations against Belfort are eliminated, there are no well-pleaded factual allegations that might plausibly give rise to an entitlement to relief.  Simply put, a Complaint which fails to identify specific misrepresentations by a particular defendant or the financial benefit to that defendant fails to state a plausible RICO claim against that defendant.

The Complaint also fails to allege facts that might extend liability to Belfort as a member of a RICO conspiracy.  Section 1962(d) of the RICO statutes makes it illegal for anyone to conspire to violate a substantive provision of the RICO statutes including § 1962(c).  A RICO conspiracy claim under 18 U.S.C. § 1962(d) can only be established by showing either that (1) the defendant agreed to the overall objective of the conspiracy; or (2) the defendant agreed to commit two predicate acts.  *Am Dental Ass'n,* 605 F.3d at 1293*, quoting Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 950 (11th Cir.1997), *United States v. Church,* 955 F.2d 688, 694 (11th Cir. 1992).

In *Am. Dental Ass'n v. Cigna Corp.,* the Court eliminated the complaint's conclusory allegations of an agreement to the overall objective of the conspiracy or an agreement to commit two predicate acts.  605 F.3d at 1293-94.  The conspiracy claim on Plaintiffs' conclusory allegations that "[e]ach Defendant and member of the conspiracy, with knowledge and intent, agreed to the overall objective of the conspiracy, agreed to commit acts of fraud to relieve Class Plaintiffs of their rightful compensation and actually committed such acts."  The Court observed that these were precisely the kind of "formulaic recitations" of a conspiracy claim that the

*Twombly* and *Iqbal* found insufficient. *Id.* at 1293–95, citing *Twombly,* 550 U.S. at 557 ("a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality") and *Iqbal,* 556 U.S. at 679-82 (allegation that defendants agreed to adopt a discriminatory policy was not entitled to the presumption of truth and should be ignored under *Twombly*). The factual allegations remaining after the elimination of conclusory allegations, were merely of parallel conduct, which was insufficient to plausibly suggest a conspiracy.

The instant Complaint is bereft of any allegation that Belfort agreed to the overall objective of the conspiracy, defined as a scheme to defraud Class members into investing in cryptocurrency and diverting the investment proceeds to defendants. Comp., Doc. # 1, ¶ 264. The allegations of a conspiracy are merely conclusory and thus insufficient to raise even an inference that Belfort agreed to the conspiracy's alleged objectives. *See, e.g.*, *Id.*, ¶ 481 ("The following Defendants: Andreas Szakacs, Michael Shannon Sims, Steven Seagal, Dilawarjit Singh, John Belfort, Nader Poordeljoo, participated in the affairs of OMEGAPRO.") Nor does the Complaint assert that Belfort agreed to commit two predicate acts in furtherance of racketeering activity. The Complaint identifies the predicate acts as money laundering, mail fraud and wire fraud (*Id.,* ¶ 278). But there is not a single allegation that Belfort engaged in any specific act that might constitute these violations.

Such conclusory, formulaic recitations of a conspiracy are insufficient to comply with Rule 9(b) specificity requirement for pleading conspiracy.

## V.   PLAINTIFFS' STATE SECURITIES FRAUD CLAIMS ARE INADEQUATELY PLEADED (COUNTS 20-22)

The Complaint asserts a set of securities fraud claims under Florida's omnibus Deceptive Practices Act, swept under the label of "Florida General Business Law." The particular statutes that were allegedly violated are not identified. Counts 20 through 22 are devoid of factual allegations, containing only the most conclusory allegations drawn from the language of particular sections of the Deceptive Practices Act. Specifically, Count 20 states that Defendants' "acts and practices" constituted a fraudulent scheme to defraud in violation of Florida law "including a scheme to defraud, as defined in Florida Deceptive Practices Act." Count 21 alleges "Commodities Fraud" in violation of Deceptive Practices Act because Defendants' acts and practices "involved the use or employment of a fraud, deception, concealment, suppression or false pretense, where said uses or employments were engaged in to induce or promote the

issuance, distribution, exchange, sales, negotiation or purchase … of any securities or commodities."  Finally Count 22 alleges that "Defendants act[ed] as dealers or salespeople in the issuance, sale or purchase of, or offer to sell or purchase" unregistered securities.

First, there is no allegation that Belfort issued, purchased, sold or offered for sale securities or other commodities, or at any time acted as an issuer, dealer or salesperson for cryptocurrency investments.  To the contrary, the Complaint alleges that Belfort and other famous people were "used" or "employed" to promote or advertise for the entities selling or offering the investments.  Second, as explained above, Plaintiffs' conclusory allegations are insufficient to state a plausible claim for securities or other fraud.

## VI.   THE COMPLAINT FAILS TO PLEAD COMMON LAW FRAUD CLAIMS AGAINST BELFORT UNDER FLORIDA LAW

The Complaint includes a mélange of fraud-based state claims, both common law and statutory, against Belfort and the approximately 50 other Defendants.  Counts 9 and 10 allege common law fraud and intentional misrepresentation, respectively.  Count 11 alleges a civil conspiracy to defraud and embezzle money from the Plaintiffs and Count 26 is for aiding and abetting fraud.

As briefly addressed below, these claims suffer from the same fatal flaw as Plaintiffs' RICO claims, to wit, the failure to meet even Rule 8(a)'s minimal pleading standards and, where the claims are fraud based, the specificity required by Rule 9(b) and Florida law– if applicable.

### A.   Plaintiffs' Fail to Plead Common Law Fraud with the Requisite Specificity (Counts 9 - 10)

As a preliminary matter, Plaintiffs' allegations are so amorphous that it is unclear whether their fraud claims are directed to Belfort.  Plaintiffs' fraud-related claims are generally stated against all "Defendants."  The exception is Plaintiffs' Count 26 for aiding and abetting fraud.  Count 26 is stated against particular Defendants including John Belfort, Sheikh Hamdan Bin Mohammed Bin Rashid Al Maktoum, the Crowned Prince of Dubai, the City of Dubai, the United Arab Emirates, Steven Seagal, and Eric Worre – implying that Belfort is not being charged with direct fraud (Counts 9 and 10), but only for aiding and abetting the fraud of others.  For this reason alone, Plaintiffs' fraud claims fail to meet minimal notice pleading standards by informing Belfort whether he is being accused of fraud, or just aiding the fraud of others.

In any event, Rule 9(b)'s heightened pleading standard applies to each of Plaintiffs' fraud-based claims.  The elements of fraud or intentional misrepresentation are: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and, (4) consequent injury by the party acting in reliance on the representation." *Townsend v. Morton*, 36 So. 3d 865, 868 (Fla. Dist. Ct. App. 2010), quoting *Johnson v. Davis,* 480 So.2d 625, 627 (Fla.1985); *see also Wadlington v. Cont'l Med. Servs., Inc.,* 907 So.2d 631, 632 (Fla. 4th DCA 2005) ("As a general rule, a false statement of fact, to be a ground for fraud, must be of a past or existing fact, not a promise to do something in the future.").

As explained above, the Complaint does not identify a specific misrepresentation by Belfort.  This shortcoming alone defeats Counts 9 and 10.  Rather than identify an affirmative misrepresentation, Plaintiffs allege that Belfort "did not disclose to investors their financial history, including her (sic) personal bankruptcies and money judgment against them. " Comp., Doc. # 1, ¶ 142.  A defendant's knowing concealment or non-disclosure of a material fact may only support an action for fraud where there is a duty to disclose.  *TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879 (Fla. Dist. Ct. App. 2000), *citing Don Slack Ins., Inc. v. Fidelity & Cas. Co. of N.Y.*, 385 So.2d 1061 (Fla. 5th DCA 1980). "[S]uch duty arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them." *State v. Mark Marks, P.A.*, 654 So.2d 1184, 1189 (Fla. 4th DCA 1995), approved by, 698 So.2d 533 (Fla.1997) (citation omitted).

Plaintiffs do not specify what Belfort failed to disclose, to whom he owed a duty to disclose and how Belfort's non-disclosures may have harmed Plaintiffs.  As noted, Belfort's history is depicted (although in highly exaggerated form) in the "Wolf of Wall Street", repeatedly cited in the Complaint – a widely released film which is routinely shown on major networks and cable channels.  Surely Plaintiffs are not alleging that Belfort's history was somehow concealed?  In any event, Plaintiffs allege that Belfort was "used" by the Ponzi-schemers because of his notoriety.  Most importantly, the Complaint does not allege a confidential, contractual or fiduciary relationship between Belfort and the Class or any of its members.  There was none.  The Complaint merely alleges that Belfort was one of many spokespeople hired by the Ponzi entities to advertise their products.  Thus, there are no allegations to support a relationship which would give rise to a duty to disclose.

Plaintiffs' fraud claims also fail because the allegations merely lump Belfort together with other Defendants.  In *Eagletech, supra,* 79 So.3d 855, 863, the appellate court affirmed the trial court's dismissal of fraud claims, finding that allegations lumping together twenty-nine defendants without identifying which defendant made which misrepresentation statement lacked the requisite specificity.  *See also Simon v. Celebration Co.,* 883 So.2d 826, 833 (Fla. 5th DCA 2004) (lack of specificity "particularly troublesome" where nine separate defendants were lumped together in each count in a complaint that failed to particularize which of the nine made which of the alleged misstatements.)  Another fatal flaw in Plaintiffs' fraud pleading is Plaintiffs' comingling of separate and distinct fraud claims – stemming over a seven-year period and involving separate entities – into a single count.  *See Eageltech,* 79 So.3d at 863, citing *K.R. Exch. Servs., Inc. v. Fuerst, Humphrey, Ittleman, PL,* 48 So.3d 889, 893 (Fla. 3d DCA 2010) and Fla. R. Civ. P. 1.110(f) ("Each claim founded upon a separate transaction or occurrence ... shall be stated in a separate count ... when a separation facilitates the clear presentation of the matter set forth.")

> **B.**     **Plaintiffs Fail to Plead a Claim for Aiding and Abetting Fraud Against Belfort with the Requisite Specificity (Count 26).**

Plaintiffs' Count 26 is for aiding and abetting fraud.  To plead a claim for aiding and abetting fraud, a plaintiff must allege: (1) existence of the underlying fraud; (2) knowledge of the fraud; and (3) the defendant provided substantial assistance to the commission of the fraud. *Gilison v. Flagler Bank,* 303 So. 3d 999, 1002 (Fla. Dist. Ct. App. 2020); *ZP No. 54 Ltd. P'ship v. Fidelity & Deposit Co. of Maryland*, 917 So. 2d 368, 372 (Fla. 5th DCA 2005).  "Substantial assistance occurs when a defendant affirmatively assists, helps conceal, or fails to act when required to do so, thereby enabling the breach to occur."  *Gilison,* 303 So. 3d at 1003-04, citing *Chang v. JP Morgan Chase Bank, N.A.*, 845 F. 3d 1087, 1098 (11th Cir. 2017). "Substantial assistance requires the plaintiff to allege that the actions of the aider-abettor proximately caused the harm on which the primary liability is predicated."  *Id.*

The Complaint fails to specify what Belfort did to assist in the multiple frauds asserted in the Complaint and how Belfort's actions proximately caused Plaintiffs to lose billions of dollars. In fact, Count 26 merely lumps Belfort with seven other Defendants who were allegedly "used" to promote cryptocurrency investments over a seven year period.  The pleading is bereft of a single specific allegation of conduct by Belfort involving a particular investment, a specific

investor or aid given to a cryptocurrency entity to assist in advancing the alleged scheme.

**C.      Plaintiffs Fail to Plead a Claim for Civil Conspiracy to Commit Fraud Under Florida Law (Count 11)**

"Civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Raimi v. Furlong,* 702 So.2d 1273, 1284 (Fla. 3d DCA 1997). General or conclusory allegations of a conspiracy are insufficient and a complaint must "set forth clear, positive, and specific allegations of civil conspiracy." *World Class Yachts, Inc. v. Murphy,* 731 So.2d 798, 799 (Fla. 4th DCA 1999). Speculation or assumptions that a defendant participated in a conspiracy merely because they ultimately received some benefits from the investments is insufficient for the imposition of liability. *Eagletech,* 79 So. 3d at 863 (factual allegations insufficient to establish a reasonable inference that all of the named defendants participated in a conspiracy to defraud where complaint merely speculated that defendants all participated in some conspiracy because they ultimately received some benefit from the transactions); *Raimi,* 702 So.2d at 1285.

As explained in Section IV, above, Plaintiffs fail to plead specific allegations that Belfort agreed to enter into a conspiracy or engaged in any predicate act to further the conspiracy. Rather, Plaintiffs plead only conclusory allegations that fail to meet the specificity requirements for pleading a conspiracy to commit fraud.

**VII.    PLAINTIFFS FAIL TO STATE A CLAIM FOR CONVERSION / THEFT / EMBEZZLEMENT (COUNT 8)**

Under Florida law, theft includes larceny or theft by false pretenses and common law embezzlement. Fla. Stat. Ann. § 812.012(3)(d)1; *State v. Siegel*, 778 So. 2d 426, 427–28 (Fla. Dist. Ct. App. 2001) quoting *Denson v. Stack,* 997 F.2d 1356, 1362 (11th Cir.1993) ("under Florida law, a conversion occurs in violation of the criminal theft statute when a person who has the right to possession of property demands its return, and the property is not relinquished").

To prevail on an action for civil theft, the plaintiff must prove that the defendant (1) knowingly; (2) obtained or used, or endeavored to obtain or use, the plaintiff's property; (3) with felonious intent; (4) to deprive plaintiff of its right to or a benefit from the property or appropriate the property to the defendant's own use or to the use of a person not entitled to the

use of the property. *Howard v. Murray*, 184 So. 3d 1155, 1168 (Fla. Dist. Ct. App. 2015), citing *Gersh v. Cofman,* 769 So.2d 407, 409 (Fla. 4th DCA 2000) ("[T]o establish an action for civil theft, the claimant must prove the statutory elements of theft, as well as criminal intent."); Fla. Stat. Ann. § 812.014(1).

First, the Complaint contains only conclusory allegations that Belfort and other Defendants received money that Plaintiffs allege should have been invested in cryptocurrency: "Defendants MICHAEL SHANNON SIMS, JOHN BELFORT and others collected tens of millions of dollars from American investors of OMEGAPRO (Doc. # 1, ¶ 143) and cryptocurrency was distributed from  OmegaPro wallets to "Defendants: Andreas Szakacs, Michael Shannon Sims, John Belfort, Steven Seagal and others either as payouts to investors and bonuses to promoters or for the benefit of Defendants" (*id*.. ¶ 193).  There are no specific, concrete factual allegations – such as amounts received by Belfort, when the funds were received, the purpose of the payments or Belfort's knowledge that the funds were paid from money destined for investments.  Absent these allegations, Plaintiffs have not stated a proper claim for embezzlement, theft or conversion.

Second, money can be the subject of conversion "so long as it consists of specific money capable of identification." *Taubenfeld v. Lasko*, 324 So. 3d 529, 542 (Fla. Dist. Ct. App. 2021), quoting *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th DCA 1970) ("To be a proper subject of conversion, 'there must be an obligation to keep intact or deliver the specific money in question, so that such money can be identified.'")  To the extent that cryptocurrency is money, it cannot be the subject of a conversion claim because Plaintiffs fail to plead a specific amount of money transferred to Belfort at any specific time.

## VIII.   PLAINTIFFS' FRAUDULENT CONVEYANCE CLAIM FAILS AS TO BELFORT (COUNT 19)

Count 19 purports to be a "Statutory Claim for Fraudulent Conveyance."  The applicable Florida statute is not identified.  However, a fraudulent conveyance action is an action by a creditor against a transferee directed against a particular transaction, which, if declared fraudulent, is set aside thus leaving the creditor free to pursue the asset, or it is an action against a transferee who has received an asset by means of a fraudulent conveyance and should be required to either return the asset or pay for the asset (by way of a judgment and execution). *Gen. Elec. Co. v. Chuly Int'l, LLC*, 118 So. 3d 325, 327 (Fla. Dist. Ct. App. 2013).  Courts recognize

that the determination of actual fraudulent intent is difficult and therefore look to certain "badges of fraud" to determine whether the transfer was made with the intent to defraud creditors. *Beal Bank SSB v. Almand & Assocs.,* 780 So.2d 45, 60 (Fla.2001); *see* Fla. Stat. Ann. § 726.105.

The Complaint does not allege the Ponzi entities or Defendants transferred property or assets to Belfort to evade creditors. As noted above, there are only the conclusory allegations that Belfort and others collected tens of millions of dollars from American investors (Doc. # 1, ¶ 143) and OmegaPro distributed cryptocurrency to "Defendants: Andreas Szakacs, Michael Shannon Sims, John Belfort, Steven Seagal and others either as payouts to investors and bonuses to promoters or for the benefit of Defendants" (*id*., ¶ 193). Even assuming that such conclusory allegations are sufficient to plead a fraudulent conveyance, the claim is properly asserted against the debtor; in this case, Ponzi entities which allegedly disbursed funds obtained from investors, not the recipient of the funds. If, on the other hand, Plaintiffs contend that Belfort fraudulently transferred funds, it fails because it does not identify any transfer of assets by Belfort.

## IX.   THE COMPLAINT FAILS TO STATE FLORIDA COMMON LAW CLAIMS AGAINST BELFORT

### A.  Plaintiffs Fail to State Claims for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing Against Belfort (Counts 5 - 6)

To state a breach of contract claim, a plaintiff must establish "(1) the existence of a contract; (2) a material breach; and (3) damages resulting from the breach." *Ingram v. Butter*, No. 1421392CIVWILLIAMS, 2015 WL 9911314, at *3 (S.D. Fla. Dec. 23, 2015), quoting *Vega v. T–Mobile USA, Inc.,* 564 F.3d 1256, 1272 (11th Cir.2009). Count 5 contends that Defendants and class members entered into an implied contract by which they paid money or property which Defendants agreed to invest in cryptocurrency through an automated trading platform for a guaranteed return. "Defendants" allegedly breached the implied contract by failing to invest the property and funds as agreed, engaging in a Ponzi scheme and embezzling investor funds. Count 6 alleges that in so doing, Defendants also breached the implied covenant of good faith and fair dealing.

Plaintiffs do not allege that Belfort was a party to any contract (express or implied) with any Plaintiff or class member. Nor do Plaintiffs allege that they transferred or paid any assets to Belfort on the promise Belfort would invest in cryptocurrency. A non-party to a contract cannot, as a matter of law, be liable for its breach. Plaintiffs claim for breach of the implied covenant of

good faith and fair dealing falls with their breach of contract claim.

  **B.**  **Plaintiffs Fail to Plead Claims for Intentional and Negligent Infliction of Emotional Distress (Counts 16-17).**

  To state a claim of intentional infliction of emotional distress, Plaintiff must allege "(1) [t]he wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2)[t]he conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3)[t]he conduct caused emotional distress; and (4)[t]he emotional distress was severe." *Klayman v. Judicial Watch, Inc.,* 22 F. Supp. 3d 1240, 1256 (S.D. Fla. 2014); *Hart v. United States,* 894 F.2d 1539, 1548 (11th Cir.1990). Outrageousness is an exceedingly high bar requiring conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Ingram v. Butter*, No. 1421392CIVWILLIAMS, 2015 WL 9911314, at *5 (S.D. Fla. Dec. 23, 2015). Malice, tortious or criminal intent or intent to inflict emotional distress, standing alone, are not enough. *Id.*

  As repeatedly noted above, the Complaint lacks any specific allegation as to Belfort's conduct, knowledge or intent but includes only conclusory averments which should be eliminated from this Court's assessment of the adequacy of Plaintiffs' pleading. Once the conclusory statements are excised, there are no allegations of conduct, much less outrageous conduct, that might support an emotional distress claim or meet the fairness standard incorporated into Rule 8(a).

  **C.**  **Plaintiffs Fail to Plead That Belfort Was Unjustly Enriched (Count 7)**

  Count 7 contends that "Defendants" were unjustly enriched because only a portion of the funds paid by investors were actually invested in cryptocurrency, with the remaining funds diverted to "Defendants" for their own benefit. Comp., Doc. # 1, ¶ 364. As noted in Sections I , II(b) and IV, above, the Complaint fails to plead that any sum was paid to Belfort, the source of those funds and whether they derived from the fraud of the Ponzi Defendants.

**X.**  <u>**CONCLUSION**</u>

  For the foregoing reasons, Defendant respectfully requests that the Court enter an order granting this motion and dismissing all claims asserted against Belfort. The deficiencies cited in this motion are not curable by amendment and thus Defendant requests that the Court enter an

order dismissing Plaintiff's claims against Belfort without leave to amend.

**XI.**   **REQUEST FOR HEARING**

Due to the complexities involved with the federal and state RICO, Florida common law and Florida statutory claims asserted in the Complaint, Defendant respectfully requests that the Court set a hearing on this motion. The undersigned counsel believes that a hearing will assist the Court in highlighting the significant deficiencies that exist in the Complaint.

**XII.**   **NO MEET AND CONFER REQUIREMENT**

Pursuant to Local Rule 7.1(a)(3) this Motion is exempted from the meet and confer requirements.

Date: October 16, 2024                                         Respectfully submitted,


_/s/ Lee Stapleton_
Lee Stapleton (FBN 356778)
lstapleton@carltonfields.com
CARLTON FIELDS, P.A
700 NW 1st Avenue, Ste 1200
Miami, FL  33136
Telephone: (305) 530-0050
Facsimile:  (305) 530-0055

Ellyn S. Garofalo (admitted *pro hac vice*)
(California SBN 158795)
egarofalo@ftllp.com
LINER FREEDMAN TAITELMAN +
COOLEY, LLP
1801 Century Park West, 5th Floor
Los Angeles, CA  90067
Telephone: (310) 201-0005
Facsimile:  (310) 201-0045

*Attorneys for Defendant, Jordan Ross Belfort*