IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

_____

| | | |
|---|---|---|
| UNITED INVESTOR COMMUNITY, INC., et al., | ) | Case No.:  24-23359-Civ-Williams |
| Plaintiff, | ) | Hon. Judge Kathleen M Williams |
| -against- | ) | |
| | ) | |
| OMEGAPRO FOREX TRADING, LTD, et. al., | ) | |
| Defendants. | ) | |

_____

**PLAINTIFFS' RESPONSE TO THE JOINT MOTION TO DISMISS FIRST AMENDED
FAC FILED BY DEFENDANTS ERIC JOINT, MARINA JOINT, JUAN CARLOS
REYNOSO SR., FRANCISCO STORY, AND JORDAN ROSS BELFORT**

Plaintiffs United Investor Community, Inc., Lyadunni Udugba, and Olungbenga Bernard
Adesuyi (collectively, "Plaintiffs"), through undersigned counsel, hereby submit their response to
the Joint Motion to Dismiss the First Amended FAC ("FAC", ECF# 143), filed by Defendants Eric
Joint, Marina Joint, Jual Carlos Reynoso Sr., Francisco Story, and Jordan Ross Belfort (collectively
"Moving Defendants"). [ECF No. 181].  For the reasons stated below, Plaintiffs respectfully
request that the Court deny Defendants' motion in its entirety. [1]

**DISCUSSION**

**A.  Plaintiff's FAC States Plausible Federal and Florida RICO Claims**

The Moving Defendants argue that the FAC fails to state Federal and Florida RICO claims
for three reasons. [ECF 181 at 22-29].  First, there is a lack of specificity as to the Defendants

---

[1]

Although Plaintiffs are now responding in opposition to the Motion to Dismiss, based on newly discovered
evidence/facts and taking into consideration some of the arguments raised by the Defendants, Plaintiffs will be filing
a motion for leave to amend their complaint.

alleged involvement in the fraud. [Id. at 22-24].  Second, the FAC fails to plausibly allege the elements of RICO. [Id. at 24-28].  Lastly, that the RICO claims are barred by the Securities Fraud Exception. [Id. at 28-29].

1.  ***Plaintiffs satisfied the pleading requirements under Fed. R. Civ. P. 9(b)***

The Moving Defendants argue the FAC fails to plead the RICO claims with sufficient specificity. [ECF 181 at 22-24].  On a motion to dismiss, courts must accept the FAC's allegations as true and interpret them in the light most favorable to plaintiffs.  <u>Resnick v. AvMed, Inc.</u>, 693 F.3d 1317, 1325 (11th Cir. 2012).  Under Fed. R. Civ. P. 8(a)(2), the FAC need only include a "short and plain statement of the claim showing that the pleader is entitled to relief."   Fraud claims must meet a heightened pleading standard.  *See* Fed. R. Civ. P. 9(b).  This requires plaintiffs to allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." <u>Ambrosia Coal & Constr. Co. v. Morales</u>, 482 F.3d 1309 (11th Cir. 2007).

Here, the FAC satisfies Fed. R. Civ. P. 9(b)'s specificity requirement.  It details the misrepresentations made by each Moving Defendants to promote OmegaPro Enterprise Ponzi Scheme as a legitimate, licensed platform, including false promises of a 15% monthly return and 200% total annual return, and false statements concerning the Return on Investments (ROI) earned by investors —through social media, US mail, email, and Zoom calls, and supported this deception with fabricated ROI figures posted weekly on OmegaPro's investor portal and falsely represented OmegaPro as a registered hedge fund and licensed financial advisor, misleading investors about its legitimacy.  The FAC alleges specific times, places, content, and methods of

the statements, as well as each Moving Defendants' intent to deceive investors and their personal financial gains from the scheme, demonstrating a clear, particularized claim of fraud.

For instance, the FAC alleges, with particularity, that "each and every individual and corporate defendant" including each Moving Defendant did participate in the Ponzi scheme with the intend to defraud the Plaintiffs:

> Each Moving Defendant was "aware that trading cryptocurrency on behalf of investors required registration[,] that OmegaPro operated as a Ponzi scheme, with no actual investments, and that funds from new investors were being used to pay bonuses and returns to earlier investors." [ECF 143 at 166].

> Each Moving Defendant "assure[d] investors that the[] scheme was legitimate and compliant with all applicable laws, [and] made material misstatements about OmegaPro's licenses and registrations." [Id. at ¶ 167].

> Each Moving Defendant "advertised OmegaPro as a trading platform that generated profits from trading investors' cryptocurrency. But this was false." [Id. at ¶ 181].

> Reach Moving Defendant "made, or caused to be made, untrue statements of material fact and material omissions to investors and potential investors, including [that] OmegaPro is a registered hedge fund in the United States … OmegaPro is a registered investment adviser… OmegaPro is a registered broker ..." [Id. at ¶ 236].

> Each Moving Defendant "used social media platforms such as FaceBook, You Tube, WhatsApp, Telegram groups, Instagram and Zoom meetings, in person meetings, and other means to promote OmegaPro. [Id.at ¶ 160].

> Each Moving Defendant "promoted OmegaPro to investors through emails and Zoom calls, where [he and his co-defendants] presented slides promising a monthly return of 15% and a 200% return on investments." [Id. at ¶ 130].

> "Each Individual Defendant, in connection with the acts, conduct and other wrongs alleged, directly or indirectly, used the United States mail, interstate telephone communications, and the Internet via zoom and other social media platforms, to facilitate their fraud and criminal activities." [Id. at ¶ 246].

"Every Friday, on its investor portal, OmegaPro posted ROI purportedly derived from weekly trading profits for the prior week." [Id. at ¶ 152].

"The ROI posted weekly to investors' accounts was entirely fabricated by the Defendants." [Id. at ¶ 183].

"Defendants' statements about OmegaPro's consistent returns from trading and profits were false [] OmegaPro solicited over 10 billion dollars' worth of investor cryptocurrency but traded only $3 million dollars' worth of cryptocurrency from August 2019 through April 2022." [Id. at ¶ 189].

"The remainder of those billion dollars' worth of cryptocurrency sat in OmegaPro's wallets at a payment processor and was distributed to Defendants." [Id. at ¶ 190].

As such, and contrary to the Moving Defendants' assertions, the FAC provides precise details of their individual fraudulent conduct to meet the heightened 9(b) pleading standards so as to give each Moving Defendant fair notice of the claims against them including:

(a) **Precise misrepresentations made by each Moving Defendant:**

The FAC specifically identifies multiple instances where each Moving Defendant falsely promoted OmegaPro as a legitimate, high-return investment opportunity and falsely assured potential investors that OmegaPro was a licensed hedge fund offering consistent returns of 15% per month and annual returns exceeding 200%. These false promises were critical in misleading investors into believing that the platform was a legitimate and safe investment vehicle.

(b) **Time, place, and person responsible for misrepresentations:**

The FAC details the time and place of each Moving Defendants' misleading statements, which were made publicly between 2019 and 2022 through various channels, including social media posts, online webinars, and promotional videos. Each Moving Defendant utilized platforms such as YouTube, Instagram, Facebook, and emails to reach a broad audience, presenting himself as a credible advocate of the investment scheme. Each Moving Defendant

and their co-defendants' statements were broadcast to thousands of potential investors during live events, including online seminars and recruitment webinars, directly attributing the false claims to each Moving Defendant.

(c) **Content and manner in which misrepresentations misled plaintiffs:**

The content of each Moving Defendant's misrepresentations centered on their endorsement of OmegaPro as a risk-free, lucrative investment opportunity, emphasizing its alleged compliance with financial regulations and its capacity to deliver guaranteed returns. The FAC outlines how these statements created a false sense of security and legitimacy, directly misleading investors about the true nature of the Ponzi scheme.

(d) **What each Moving Defendant gained from the fraud:**

The FAC alleges that each Moving Defendant's active participation in promoting OmegaPro was financially motivated. It states that each Moving Defendant received substantial payouts, including bonuses and commissions, as a result of their recruitment activities. These payments were made from the fraudulent proceeds of the scheme, distributed to each Moving Defendant as compensation for their role in attracting new investors. The FAC specifies that each Moving Defendant, along with other top promoters, collected millions of dollars, which were diverted from investor funds under the guise of investment returns and promotional bonuses.

2. **Plaintiffs' RICO Claims Are Adequately Pled**

The Moving Defendants argue the RICO claims must be dismissed because the FAC fails to allege the RICO elements with regards to their individual operation or management of the enterprise, the existence of an enterprise, a pattern of racketeering or predicate acts, continuity, causation, and injury. [ECF 181 at 24-28]. They assert that the FAC does not show that any of them directed or controlled the alleged enterprise, nor does it specifically tie them to the

enterprise' structure and goals as required under _Reves v. Ernst & Young_, 507 U.S. 170, 185 (1993).  They also contend that Plaintiffs fail to allege any actual predicate acts with the requisite Rule 9(b) specificity and argue that continuity and causation are inadequately pled.  Further, they claim that the RICO conspiracy allegations lack evidence of any agreement to further the enterprise's objectives or to commit predicate acts.

When defendants conspire to defraud investors through a Ponzi scheme and utilize the U.S. mails and wires to carry out and conceal the scheme, it is RICO.  _Coquina Investments v. TD Bank, N.A._, 760 F.3d 1300 (11th Cir. 2014).  The FAC pleads sufficient facts to establish plausible RICO violations that Plaintiff and the class members were financially injured by the conduct constituting the violations, and their damages flowed from the commission of the predicate acts.  As such, the RICO claims are adequately pled.

**(a) Operating or Managing:**

The Moving Defendants argue that the FAC fails to allege that any of them "operated or managed the enterprise itself." [ECF 181 at 24-25].  Under _Reves v. Ernst & Young_, 507 U.S. 170, 179 (1993), a person "operates or manages" a RICO enterprise if they have "some part in directing [the enterprise's] affairs." RICO liability thus applies not only to those with primary control but also to individuals who participate in directing the enterprise's activities, including lower-level participants under the direction of upper management.  Id. at 184.  The RICO participation prong is met when the defendant had "some part in directing the enterprise's affairs," which "can be accomplished either by making decisions on behalf of the enterprise or by knowingly carrying them out." _United States v. Fowler_, 535 F.3d 408, 418 (6th Cir. 2008)(citing _Reves v. Ernst & Young_, 507 U.S. 170, 179 (1993)).

Here, the FAC alleges that each Moving Defendant "directly participated in the management of OmegaPro and was directly involved in the day-to-day operations…," and "knowingly and willfully conducted or participated, directly or indirectly, in the conduct of the affairs of the OmegaPro Enterprise Ponzi Scheme". [ECF 143 at ¶¶ 237 & 270].  It further alleges that they were each operators of the enterprise, organizing recruitment events, creating promotional materials, and actively encouraging investors to recruit others.  They are each alleged to have fully understood that OmegaPro was a fraudulent Ponzi scheme relying on new investor funds to pay existing investors, rather than generating profits through legitimate cryptocurrency trading.  [ECF 143 at ¶¶ 130, 160, 166-181, 189, 242-246].  Moreover, they each falsely promoted high returns—up to 15% monthly and 200% total ROI—through social media, US mail, email, and Zoom calls, and supported this deception with fabricated ROI figures posted weekly on OmegaPro's investor portal and false representations that OmegaPro was a registered hedge fund and licensed financial advisor, misleading investors about its legitimacy.  [ECF 143 at ¶¶ 130, 152, 160, 166-181, 183, 237 & 247].

These actions demonstrate that each Moving Defendant knowingly carried out the affairs of the enterprise, played a direct role in shaping enterprise's recruitment-driven structure, messaging, and expansion, and made false material misrepresentations, which they each knew were false, to solicit and coerce individuals to invest, meeting the _Reves_ standard for "some part in directing the enterprise's affairs."  Each Moving Defendant's involvement in these critical aspects of the enterprise's operations indicates they each managed, operated and financially benefited from the enterprise.  Therefore, the FAC sufficiently alleges each Moving Defendant's role in managing and operating the enterprise.

**(b) Enterprise:**

The Moving Defendants assert that the FAC's enterprise allegations are deficient due to a lack of a pleaded relationship to the enterprise. [ECF 181 at 25].  This argument is erroneous for the reasons stated in Section 2(a), supra, which establish the allegations adequately pled each Moving Defendant's ongoing role in the management and operation of the alleged Enterprise.

**(c)  Pattern of Racketeering:**

The Moving Defendants argue that the FAC fails to allege any predicate acts and does not meet Rule 9(b)'s specificity standards. [ECF 181 at 25-27].  However, this contention is erroneous for the reasons stated in Section 1, supra, which establish the allegations satisfy the heightened Fed. R. Civ. P. 9(b) pleading standard by detailing the misrepresentations made by each Moving Defendant (and others) to promote OmegaPro Enterprise Ponzi Scheme as a legitimate, licensed platform.  This includes false promises of a 15% monthly return and 200% total yearly returns, and false statements concerning the Return on Investments (ROI) earned by investors —through social media, US Mails, email, and Zoom calls, and they each supported this deception with fabricated ROI figures posted weekly on OmegaPro's investor portal and falsely represented OmegaPro as a registered hedge fund and licensed financial advisor, misleading investors about its legitimacy.  [ECF 143 at ¶¶ 130, 152, 160, 166-181, 183, 237 & 247].

By detailing the times, places, content, and methods of these statements, along with each Moving Defendant's intent to deceive investors and their financial gains from the scheme, the FAC sets forth a particularized claim of fraud and a pattern of racketeering activity, supporting the allegations that each Moving Defendant conducted or participated, directly or indirectly, in the

OmegaPro Enterprise Ponzi Scheme through a pattern of racketeering activity, including wire fraud, mail fraud, and money laundering. [ECF 143 at ¶¶ 270-275].

### (d) Continuity:

The Moving Defendants contend the FAC is deficient with respect to continuity, basing this argument on their earlier claims that Plaintiffs failed to allege any predicate acts or their ongoing involvement with the enterprise. [ECF 181 at 27].   As detailed above in Sections 1 & 2(a-c), supra, this disregards the specific allegations showing that each Moving Defendant conducted or participated, directly or indirectly, in the OmegaPro Enterprise Ponzi Scheme through a sustained pattern of racketeering activity.  This included a series of related predicate acts of wire fraud, mail fraud, and money laundering over a substantial period of time (2019 through 2022) all connected to each Joints' Defendant's ongoing operation and management of the enterprise. [ECF 143 at ¶¶ 130, 152, 160, 166-181, 183, 189-192, 237-238, 241-247 & 271-276].

Plaintiffs may prove "continuity of racketeering activity, or its threat ... in a variety of ways." _H.J. Inc. v. Nw. Bell Tel. Co_., 492 U.S. at 241.  "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time" or "the predicate acts or offenses are part of an ongoing entity's regular way of doing business." _Id._ at 242.  Here, Plaintiffs established "continuity over a closed period by alleging a series of related predicate acts extending over a substantial period of time" and that these predicate acts "are part of [Defendants] regular way of doing business," which are ongoing. _Id._  The allegations satisfy RICO continuity requirement.  See [ECF 143 at ¶¶ 277-279]. These allegations satisfy RICO continuity requirement.  _See H.J. Inc_., 492 U.S. 229, 242-243 (1989).

### (e) Causation and Injury:

The Moving Defendants argue that causation and injury are insufficiently pled because the FAC lacks specific investment dates and fails to allege predicate acts. [ECF 181 at 27-28]. As outlined above, the FAC sufficiently details the predicate acts as well as the Plaintiffs' financial injury by the conduct constituting the RICO violations during the period 2019 -2022, and those damages flowed from the commission of the predicate acts. See Sections 1 & 2(a-d), supra; see also [ECF 143 at ¶¶ 130, 152, 160, 166-181, 183, 189-192, 237-238, 242-248, 270-275, 280-282].

**(f) Conspiracy:**

The Moving Defendants argue that the conspiracy claims fail because, in addition to the RICO itself failing to meet the pleading standards, there is no allegation that any of them agreed to the overall objectives of the conspiracy or agreed to commit two predicate acts. [ECF 181 at 14]. Contrary to their contentions, the FAC alleges that each Moving Defendant agreed to the overall objectives of the conspiracy, and further agreed to the commission of at least two predicate acts to further the scheme. [ECF 143 at ¶¶ 320-327]. Moreover, the Court may properly infer from each Moving Defendants' commission of the alleged predicate acts that they agreed to participate in the OmegaPro Enterprise Ponzi Scheme conspiracy through a pattern of racketeering activity. See _U.S. v. Starrett_, 55 F.3d 1525, 1549 (11th Cir. 1995)_; see also Am. Dental Ass'n v. Cigna Corp_., 605 F.3d 1283, 1293 (11th Cir. 2010).

**3. The Federal RICO Claims are Not Barred by the Securities Fraud Exception**

The Securities Fraud Exception under 18 U.S.C. § 1964(c) precludes civil RICO claims "if the conduct would have been actionable as fraud in the purchase or sale of securities." For the preclusion to apply, the alleged scheme must qualify as an "investment contract" under the _Howey_ test, which requires: (1) an investment of money, (2) in a common enterprise, (3) with an

expectation of profits to be derived solely from the efforts of others. See _SEC v. W.J. Howey Co._, 328 U.S. 293, 297-299 (1946); see also _SEC v. Unique Fin. Concepts, Inc_., 196 F.3d 1195, 1199 (11th Cir. 1999).  Contrary to the Defendants' contentions, [ECF# 181 at 28-29], the RICO claims are not barred because the FACs allegations do not constitute "investment contracts" and are therefore not actionable under the securities laws.

The FAC alleges that each investor's own recruitment efforts played a significant role in determining their profitability, thus failing the "profits from others" element of the _Howey_ test. Specifically, investors were encouraged to recruit others, with referral bonuses awarded based on each investor's recruitment efforts, forming the primary basis of anticipated profits.[2]  This element is reiterated in paragraphs 137 & 169, which underscores that each investor's own efforts in recruitment played a primary role in their anticipated success and profitability.  [ECF 143 at ¶ 137 & 159].  These allegations cut sharply against the conclusion that the alleged scheme satisfies the "profits from others" element of the _Howey_ test.  Because the OmegaPro scheme's profits were not derived "solely from the efforts of others," it does not qualify as an "investment contract" and does not trigger the Securities Fraud preclusion.

Moreover, at this stage, the Court cannot conclude that the "profits from others" element of the _Howey_ "investment contract" test is satisfied.  The question of whether the FAC's allegations constitute an "investment contract" is a mixed question of fact and law which

---

[2]    For instance, the FAC alleges that "[t]he structure of the pyramid scheme was such that _the referral bonuses_, _based on each of the investor's own efforts_ in recruiting others to invest and profiting from the recruited investments, _played a primary role in each investor's own anticipated success and profitability_." [ECF 143 at ¶ 116 ](emphasis added).

Plaintiffs contend must be submitted to the jury.[3]  Accordingly, the Court cannot yet determine whether the FAC's allegations constitute securities.

### 4. Because the FAC Adequately Pled Federal RICO Claims, the State Law Claims Should Not Be Dismissed for Lack of Subject Matter Jurisdiction

The Moving Defendants argue that if the federal RICO claims are dismissed, the Court should dismiss the state law claims for lack of subject matter jurisdiction. [ECF 181 at 29-30]. However, as demonstrated above, the FAC adequately pleads federal RICO claims. See Sections 1-3, supra.  District courts have consistently held, following *Republic of Panama v. BCCI Holdings (Lux.), S.A.*, that RICO's nationwide service of process provision permits the exercise of both personal and subject matter jurisdiction over RICO defendants. 119 F.3d 935, 942 (11th Cir. 1997). When personal jurisdiction is established under the federal RICO statute, courts may exercise pendent personal jurisdiction over related state law claims.  See *Prou v. Giarla*, 62 F. Supp. 3d 1365, 1373 (S.D. Fla. 2014); *BankAtlantic v. Coast to Coast Contractors*, 947 F. Supp. 480, 484 (S.D. Fla. 1996) (noting RICO's nationwide service as the basis for personal jurisdiction in RICO actions). Accordingly, this Court has subject matter jurisdiction over the state law claims.

### 5. This Court Has Personal Jurisdiction Over Defendants Eric Worre, Marina Worre and Francisco Story

As a RICO case, this matter is governed by the nationwide service of process provision under 18 U.S.C. § 1965.  This provision establishes personal jurisdiction over any defendant in a RICO case, regardless of their location within the United States.  See *Republic of Panama v. BCCI*

---

[3]   *See e.g., Marini v. Adamo*, 812 F. Supp. 2d 243, 261 n.15 (E.D.N.Y. 2011)("the Court is unable to determine at this stage of the litigation— i.e., *prior to a jury's determination on the question of whether the transactions here were investment contracts*—whether the PSLRA bar applies to preclude plaintiffs' civil RICO claims")(emphasis added).

*Holdings (Lux.) S.A.,* 119 F.3d 935, 942 (11th Cir. 1997)("when a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction."). The Moving Defendant's argument that this Court lacks personal jurisdiction over them is thus incorrect. [ECF 181 at 30-31]. Personal jurisdiction is established under 18 U.S.C. § 1965, which only requires that Defendants Eric Worre, Marina Worre and Franscisco Story each have minimum contacts with the United States as a whole to satisfy due process. *Prou v. Giarla,* 62 F. Supp. 3d 1365, 1372-73 (S.D. Fla. 2014). Defendants Eric Worre, Marina Worre and Franscisco Story each reside in the United States, meeting this threshold. See *Millner v. Plutus Enters*., LLC, 2022 U.S. Dist. LEXIS 110795, at *8-11 (minimum contacts requirement met through residence in the U.S.). Moreover, Eric Joint served as OmegaPro's Strategic Coach, and Marina Joint and Franscisco were both Promoters. In these roles, they recruited thousands of investors globally, including plaintiffs residing in Florida, to participate in the Ponzi scheme. These actions further establish their contacts with Florida, though specific contacts with an individual state are not necessary under RICO's nationwide service of process provision.

**6. This Court's Exercise of Personal Jurisdiction Does Not Offend Due Process**

Defendants Eric Worre's, Marina Worre's and Franscisco Story's constitutional objections to personal jurisdiction is misplaced, [ECF 181 at 31], as jurisdiction is established under RICO, which permits courts to assess personal jurisdiction within the framework of the Fifth Amendment. Courts must evaluate whether the requirements of fairness and reasonableness are satisfied, balancing the burden on the defendant against the federal interest in the litigation. See *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1144-1145 (S.D. Fla. 2019). Under the Fifth Amendment, due process analysis requires that the defendant's minimum contacts with

the forum are purposeful and that exercising jurisdiction does not violate "traditional notions of fair play and substantial justice." *Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 43 F.4th 1303, 1307-08 (11th Cir. 2022).  However, courts engage in this balancing only if a defendant demonstrates that their liberty interests are infringed.  If a defendant fails to present a "compelling case" showing that jurisdiction is unreasonable, courts weigh the federal interests favoring jurisdiction. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).  The burden is on the defendant to show jurisdiction in the forum is "so gravely difficult and inconvenient that [they are] at a severe disadvantage." *Republic of Pan. v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 948 (11th Cir. 1997) (quoting *Burger King*, 471 U.S. at 478).  Here, none of the Moving Defendants argue that defending this action in the chosen forum would be burdensome. Consequently, no due process concerns affect jurisdiction.  Plaintiff's RICO claims are sufficiently credible to support personal and subject matter jurisdiction without constitutional issues.

### 7.  The FAC Adequately States Plausible State Law Causes of Action

#### (a)  Breach of Implied Contract

Defendants argue that the breach of implied contract claim fails due to a lack of specific allegations against them, [ECF 181 at 32], however, this is incorrect.  An implied contract is "enforceable based on an implicit promise inferred from the conduct of the parties and not solely on their words" *17 Am. Jur. 2d Contracts* § 3 (1964); see also *SBP Homes, LLC v. 84 Lumber Co.*, 384 So. 3d 241 (Fla. 4th DCA 2024)).  A fact finder must examine the parties' conduct to interpret their unspoken agreement. 1 Arthur Linton Corbin, *Corbin on Contracts* §§ 562 (1960).  Under Florida law, defining an implied contract involves determining "the effect which the parties, as fair and reasonable men, presumably would have agreed upon if they had contracted expressly"

*Policastro v. Myers*, 420 So. 2d 324, 326 (Fla. 4th DCA 1982).  The Moving Defendants' roles as Strategic Coach and Promoters at OmegaPro, where they recruited thousands of investors and promised them 5% guaranteed ROIs, establish their implied contractual obligations toward Plaintiffs. [ECF 143 at ¶¶ 340-347].  Moreover, the existence of an implied contract here turns on disputed facts, which makes it improper for resolution at the motion to dismiss stage.

### (b) Breach of Implied Covenant of Good Faith and Fair Dealing

Under Florida law, the implied covenant of good faith and fair dealing is inherent in every contract, whether express or implied, contrary to Defendants' argument.  The Eleventh Circuit in *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999), confirmed this principle, noting that Florida law imposes an obligation of honest performance in all contracts.  Here, Plaintiffs allege that each Moving Defendants breached an express term of the implied contract by, inter alia, falsely guaranteeing a 5% weekly ROI while knowing this was untrue. [ECF 143 at ¶¶ 348-359].  This express term, which is essential to the implied contract, invokes the covenant of good faith, as each Moving Defendant's misrepresentation directly impacts its performance (*Harrison Land Dev., Inc. v. R.H. Holding Co., Inc.*, 518 So.2d 353, 355 (Fla. Dist. Ct. App. 1988); *Bowers v. Medina*, 418 So.2d 1068, 1069 (Fla. Dist. Ct. App. 1982)).  Thus, Florida law supports Plaintiffs' claim that each Moving Defendant breached an express term within the implied contract, making their argument that the covenant does not apply to implied contracts incorrect.

### (c) Unjust Enrichment

The Moving Defendants argue that the FAC fails to allege that any of the Moving Defendants received, knew of, or accepted any benefit from Plaintiffs' investment, or that it would be inequitable for them to retain such a benefit. [ECF 181 at 33].  However, in their roles

in the alleged enterprise, each Moving Defendant lured Plaintiffs to invest with promises of a guaranteed 5% weekly ROI, knowing that none of the funds were invested as represented and that the vast majority of funds were either stolen or converted for each Moving Defendant's own use.   [ECF 143 at ¶¶ 360-368]. This scheme directly enriched each Moving Defendant by providing financial gain at Plaintiffs' expense.   When defendants act in concert to unjustly obtain benefits, each can be held liable for unjust enrichment, even if the benefit was not conferred directly. See *State Farm Mut. Auto. Ins. Co. v. Brown*, No. 16-cv-80793, 2017 WL 1291995, at *7 (S.D. Fla. Mar. 30, 2017).  Here, Plaintiffs allege that each Moving Defendant acted in concert to obtain funds through deception, meeting the elements for an unjust enrichment claim under Florida law.

### (d) Conversion/Theft/Embezzlement.

The Moving Defendants argue that conversion claims fail because there are no allegations of funds that they exercised control over. [ECF 181 at 33-34].  Here, when read in the light most favorable to Plaintiffs, the FAC sufficiently alleges that each Moving Defendant exercised wrongful control over Plaintiffs' investments by soliciting funds for a purported investment scheme in which they had no intention of properly investing, leading to Plaintiffs' financial harm. [ECF 143 at ¶¶ 369-374].  Despite Plaintiffs' demands for the return of their funds, each Moving Defendant refused, making the conversion claim sufficiently pled.

Next, they argue the civil theft claim is defective due to a lack of alleged felonious intent. [ECF 181 at 33].  However, under Florida law, felonious intent can be inferred from a defendant's conduct. See e.g., *Gellman v. State*, 371 So. 2d 181, 182 (Fla. Dist. Ct. App. 1979); *Casso v. State*, 182 So.2d 252 (Fla. 2d DCA 1966)).  The FAC supports an inference of felonious intent by alleging

that each Moving Defendant received Plaintiffs' funds with promises to invest them, yet failed to do so, and instead knowingly appropriated the funds for personal use, intending to permanently deprive Plaintiffs. [ECF 143 at ¶¶ 369-374].  This conduct aligns with a felonious intent inference making Plaintiffs' civil theft claim sufficiently pled.  Moreover, resolution of any disputed fact that would support a felonious intent inference is inappropriate at the motion to dismiss stage.

Lastly, the Moving Defendants argue that embezzlement claim is defective for failing to allege that they received any of the Plaintiffs' funds. [ECF 181 at 34].  However, Florida law defines "obtaining or using" property broadly to include acts like "stealing, larceny, purloining, he FAC alleges, when read in the light most favorable to Plaintiffs, that each Moving Defendant received Plaintiffs' funds under false promises to invest them but knowingly diverted the funds for personal gain.  This alleged conduct—soliciting funds through deception and misappropriating them—satisfies the definition of embezzlement, regardless of direct possession.  Therefore, the embezzlement claim is sufficiently pled.

(e) **Common Law Fraud and Intentional Misrepresentation**

The Moving Defendants argue that the FAC fails to meet the elements of fraud and misrepresentation and lacks the particularity required under Florida Rule of Civil Procedure 1.120(b). [ECF 181 at 35].  For the reasons previously discussed, the FAC addresses each element of fraud and misrepresentation with the requisite heightened specificity. See Sections 1-2, supra. The FAC details the misrepresentations, specifying who made them, the content of the statements, when and where they were made, and the context in which Plaintiffs were misled. It also establishes each Moving Defendant's intent to induce reliance, as well as the consequent

injury suffered by Plaintiffs, and what each Defendant gained by this alleged fraud. See Sections 1 & 2, supra

### (f)  Civil Conspiracy

The Moving Defendants argue that the fraud claim lacks specificity and that general conspiracy allegations are insufficient. [ECF 181 at 35-36].  However, as outlined above, the Complaint satisfies the pleading standard by detailing the misrepresentations made, the timing and context of those statements, the parties responsible (including each of the Moving Defendants), and the manner in which these statements misled Plaintiffs. See Sections 1-2, supra. Since the Complaint adequately alleges a common law fraud claim, which forms the basis for civil conspiracy, the civil conspiracy claim is also properly pled.  See _Raimi v. Furlong_, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997).

### (g)  Intentional Infliction of Emotional Distress (IIED)

The Moving Defendants' assertion that the FAC lacks facts supporting IIED is incorrect. [ECF 181 at 36-37].  Each Moving Defendant recruited hundreds, if not thousands, of innocent investors into a Ponzi scheme, an act that was not only intentional and reckless but also one they knew or should have known would likely cause severe emotional distress.  This behavior, involving the loss of substantial funds, including some individuals' life savings, is "atrocious and utterly intolerable" and goes beyond all bounds of decency, meeting the standard of extreme and outrageous conduct under _Ponton v. Scarfone_, 468 So.2d 1009, 1011 (Fla. 2d DCA 1985). Therefore, each Moving Defendant's actions fulfill the elements of an IIED claim: (1) intentional or reckless conduct with the foreseeable likelihood of causing emotional distress; (2) conduct so extreme that it is intolerable in a civilized community; (3) conduct that did, in fact, cause

emotional distress; and (4) emotional distress that was severe. [ECF 143 at483-498].  Plaintiffs have thus sufficiently alleged specific conduct by each Moving Defendant that meets each element required for an IIED claim.

### (h) Punitive Damages

For the reasons discussed, See Sections 1-2, supra, Plaintiff's FAC sufficiently states Federal and Florida RICO claims, which constitutes a reasonable basis to award punitive damages, contrary to the Moving Defendants' assertions. [ECF 181 at 37].

### (i) Fraudulent Conveyance

The Moving Defendants argue that Plaintiffs fail to state a claim for fraudulent conveyance. [ECF 181 at 37-38].  Florida law requires "a creditor to be defrauded, a debtor intending fraud, and a conveyance of property applicable to the payment of the debt" (_Bay View Estates Corp. v. Southerland_, 114 Fla. 635, 154 So. 894, 900 (Fla. 1934).  The FAC alleges, when read in the list most favorable to Plaintiffs, that each Moving Defendant transferred assets to avoid creditors, including Class members, with intent to hinder, delay, or defraud, and without receiving equivalent value.  These allegations satisfy the elements of fraudulent conveyance.

### (j) Violations of Florida General Business Law

The Moving Defendants argue that Plaintiffs fail to specify the legal provision under Florida law and that the claim is grounded in fraud, requiring heightened specificity.  The Florida Deceptive Practices Act (FDUTPA) aims to protect consumers and businesses from deceptive or unfair practices § 501.202(2), Fla. Stat.  A FDUTPA claim requires (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.  _Chicken Unlimited, Inc. v. Bockover_, 374 So. 2d 96, 97 (Fla. 2d DCA 1979).  Plaintiffs allege a deceptive scheme by each Moving Defendants that

caused financial harm, meeting these elements, and the fraud was pled with the requisite specificity. See Sections 1-2, and 7(e), supra.

**(k) Failure to Register**

The Moving Defendants assertion that Plaintiff fails to state a failure to register claim is incorrect.  [ECF 181 at 39].  While FDUTPA does not specifically address securities, it does cover deceptive acts by individuals and corporations claiming to offer regulated services like securities or commodities.  Plaintiffs adequately allege that each Moving Defendant engaged in deceptive practices that led them to believe OmegaPro was a registered entity.  Therefore, this cause of action should not be dismissed.

**(l)   Injunctive Relief**

The FAC sufficiently alleges Defendants' conduct related to future illegal actions. [ECF 143 at ¶¶ 518-523].  It also alleges that unless each Moving Defendant is enjoined from unlawfully depriving Class members of rights under their implied contract and from transferring assets to evade creditors, Plaintiffs will face immediate and irreparable harm. Id.  Accordingly, this cause of action is sufficiently pled contrary to the Moving Defendants' assertions. [ECF 181 at 39-40].

**(m) Statute of Limitations**

The Moving Defendants assert that none of the causes of action specify a date. [ECF 181 at 41].  The FAC provides the time period for each alleged act and those time periods are within the statute of limitations.  Therefore, the state law claims should not be dismissed.

**(n) Remaining Claims**

To the extent not specifically addressed, Plaintiffs contest any such claims based on the grounds raised herein.

**Conclusion**

For the reasons set forth above, Plaintiffs respectfully request the Court deny the Moving Defendants' Motion to Dismiss in its entirety.

Respectfully Submitted,

/s/ J.Wil Morris
J. Wil Morris, Esquire

Attorney for Plaintiff
2800 Biscayne Blvd
Suite 530
Miami, Florida 33137
Telephone: 305-444-3437
Fax: 305-444-3457
Florida Bar No.: 069493

**Certificate of Service**

I, Wil Morris, hereby certified that on April 17, 2025 a Copy of the foregoing Plaintiffs' response to the Moving Defendants' motion to dismiss was served on all the attorneys listed in this case via ECF.

/s/ J.Wil Morris