**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CIVIL CASE NO. 1:24-cv-23359-CIV-ARTAU/D'ANGELO**

UNITED INVESTOR COMMUNITY, INC., et al.,

Plaintiffs,

v.

OMEGAPRO FOREX TRADING LTD., et al.,

Defendants.
_______________________________________/

**JOINT MOTION TO DISMISS THIRD AMENDED COMPLAINT WITH PREJUDICE ON BEHALF OF SPECIALLY APPEARING DEFENDANTS ERIC WORRE AND MARINA WORRE, DEFENDANT JUAN CARLOS REYNOSO SR., SPECIALLY APPEARING DEFENDANT FRANCISCO STORY, DEFENDANT JORDAN ROSS BELFORT, AND DEFENDANT JOHN C. MAXWELL, AND INCORPORATED MEMORANDUM OF LAW**

**(HEARING REQUESTED)**

Specially Appearing Defendants Eric Worre and Marina Worre, Defendant Juan Carlos Reynoso, Sr.,[1] Specially Appearing Defendant Francisco Story,[2] Defendant Jordan Ross Belfort, and Defendant John C. Maxwell (collectively, the "Moving Defendants"), through undersigned counsel, move under Federal Rules of Civil Procedure 12(b)(6), 12(b)(1), 12(b)(2), and 9(b) to dismiss with prejudice the Third Amended Class Action Complaint (DE 289) (the "TAC") filed

[1] Mr. Reynoso is a defendant in *United States v. Sims & Reynoso*, No. 3:25-cr-00284-RAM (D.P.R.), on which the TAC relies. (TAC ¶¶ 3, 19, 36–38.) He is presumed innocent of those charges, and an indictment is an accusation, not evidence. Nothing in this Motion is, or should be construed as, an admission of any allegation in the TAC, the indictment, or any related proceeding. Mr. Reynoso expressly preserves all rights, including his rights under the Fifth Amendment to the United States Constitution and his right to seek a stay of this action pending resolution of the criminal proceeding.

[2] Eric Worre, Marina Worre, and Francisco Story appear specially and do not waive, and expressly preserve, their objection to personal jurisdiction. *See* Part IV.G, *infra*.

by Plaintiffs United Investor Community, Inc., Lyadunni Udugba, and Olungbenga Bernard Adesuyi ("Plaintiffs").

DATED this 8th day of October, 2026.

Respectfully submitted,

/s/ Robert Z. DeMarco
Robert Z. DeMarco (FBN 99378)
Richard A. Schonfeld (Pro Hac Vice)
CHESNOFF & SCHONFELD
520 S. 4th Street
Las Vegas, Nevada 89101
Tel/Fax: 702-384-5563
rschonfeld@cslawoffice.net
rdemarco@cslawoffice.net
Attorneys for Specially Appearing Defendants
Eric Worre and Marina Worre

/s/ Nickolas C. Sessions
Jake Taylor (FBN 0520896)
Keith M. Woodwell (Pro Hac Vice)
Nickolas C. Sessions (Pro Hac Vice)
CLYDE SNOW & SESSIONS
201 South Main Street, Suite 2200
Salt Lake City, Utah 84111
Tel/Fax: 801-322-2516
Attorneys for Specially Appearing Defendant
Francisco Story

/s/ Eric W. Ostroff
Eric W. Ostroff, Esq. (FBN 10130)
Shira A. Baratz, Esq. (FBN 1050560)
MELAND BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6363
Attorneys for Defendant John C. Maxwell

/s/ Lee Stapleton
Lee Stapleton (FBN 356778)
lstapleton@carltonfields.com
CARLTON FIELDS, P.A.
700 NW 1st Avenue, Suite 1200
Miami, Florida 33136
Telephone: (305) 530-0050

Ellyn S. Garofalo (Pro Hac Vice)
egarofalo@ftllp.com
LINER FREEDMAN TAITELMAN + COOLEY, LLP
1801 Century Park West, 5th Floor
Los Angeles, California 90067
Telephone: (310) 201-0005
Attorneys for Defendant Jordan Ross Belfort

/s/ George S. Savage
George S. Savage, Esq.
Florida Bar No. 051772
THE SAVAGE LAW GROUP, P.A.
2030 South Douglas Road, Suite 214
Coral Gables, Florida 33134
Telephone: (305) 577-0000
gss@savagelaw.net
Attorney for Defendant Juan Carlos Reynoso, Sr.

## TABLE OF CONTENTS


**Page**

I. INTRODUCTION ..... 1

II. PROCEDURAL HISTORY ..... 2

III. THE THIRD AMENDED COMPLAINT ..... 3

IV. ARGUMENT ..... 4

A. Section 1964(c) Still Bars Plaintiffs' RICO Claims. ..... 4

1. The Court has already decided that the OmegaPro scheme is securities fraud. ..... 4

2. Every § 1957 predicate in the TAC "relies upon" the securities fraud. ..... 5

3. The RICO conspiracy claim is barred for the same reason. ..... 8

B. The TAC Does Not Plead a § 1957 Predicate Act by Any Moving Defendant. ..... 9

1. The TAC identifies no transaction. ..... 9

2. Rule 9(b) applies, and the TAC does not satisfy even Rule 8. ..... 10

3. The TAC does not plausibly allege that any Moving Defendant knew the property was criminally derived. ..... 11

C. The TAC Does Not Plead a § 1962(c) Enterprise or Any Moving Defendant's Operation or Management of One. ..... 11

1. The "Proceeds-Distribution and Laundering Enterprise" is not an enterprise. ..... 11

2. The TAC concedes the operation-or-management requirement is not met. ..... 12

D. The TAC Does Not Plead a Pattern of Racketeering Activity ..... 13

E. Plaintiffs Do Not Plead RICO Injury Caused "By Reason Of" Any § 1957 Transaction. ..... 13

F. The RICO Conspiracy Claim (Count II) Fails. ..... 15

G. The Court Should Again Decline Supplemental Jurisdiction, and Personal Jurisdiction Over the Worres and Mr. Story Falls With the RICO Claims. ..... 15

H. Alternatively, Counts III Through VI Fail to State a Claim. ..... 16

1. Unjust enrichment (Count III). ....................16
2. Conversion (Count IV). ....................16
3. Civil conspiracy (Count V). ....................17
4. Fraudulent transfer (Count VI). ....................17
I. Dismissal Should Be With Prejudice. ....................17
V. REQUEST FOR HEARING ....................18
VI. CONCLUSION ....................18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ageloff v. Kiley*, 318 F. Supp. 2d 1157 (S.D. Fla. 2004) ....................10

*Almanza v. United Airlines, Inc.*, 851 F.3d 1060 (11th Cir. 2017) ....................12

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010) ....................4

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) ....................13, 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................4, 10

*Audette-Weaver v. J.G. Wentworth, S.S.C., L.P.*, No. 07-CIV-2056, 2008 WL 11336685 (M.D. Fla. Feb. 26, 2008) ....................15

*Awad v. Omar*, No. 18 Civ. 10810 (NRB), 2019 WL 5727327 (S.D.N.Y. Nov. 5, 2019) ....................6

*Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321 (3d Cir. 1999) ....................5, 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................4

*Boyle v. United States*, 556 U.S. 938 (2009) ....................12

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364 (11th Cir. 1997) ....................10

*Champion v. Homa*, No. 3:03-CV-275-MEF, 2008 WL 900967 (M.D. Ala. Mar. 31, 2008) ....................5

*Chelder v. Gen. Conf. Corp.*, No. 25-CIV-4313, 2026 WL 696903 (S.D.N.Y. Mar. 12, 2026) ....................4

*Cisneros v. Petland, Inc.*, 972 F.3d 1204 (11th Cir. 2020) ....................7, 12

*D'Addario v. D'Addario*, 901 F.3d 80 (2d Cir. 2018) ....................14

*D'Addario v. D'Addario*, 75 F.4th 86 (2d Cir. 2023) ....................8

*Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243 (11th Cir. 2016) ....................5, 7

*EIG Energy Fund XIV, L.P. v. Keppel Offshore & Marine Ltd.*, No. 18 Civ. 1047 (PGG), 2020 WL 2319127 (S.D.N.Y. May 11, 2020) ....................6

*Freeman v. First Union Nat'l Bank*, 865 So. 2d 1272 (Fla. 2004) ....................17

*Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258 (1992) ....................13, 14

*Jackson v. Bank of Am., N.A.*, 898 F.3d 1348 (11th Cir. 2018) ....................17

*Jackson v. BellSouth Telecomms.*, 372 F.3d 1250 (11th Cir. 2004) .............................................15

*Kopel v. Kopel*, 229 So. 3d 812 (Fla. 2017)..........................................................................16

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666 (S.D.N.Y. 2013), vacated in part on other grounds sub nom. Gelboim v. Bank of Am. Corp., 823 F.3d 759 (2d Cir. 2016)..........................................................................................6

*Licht v. Watson*, 567 F. App'x 689 (11th Cir. 2014) ..............................................................5, 17

*Mansour v. Morgan Stanley*, No. 25-CV-7633 (CM), 2026 WL 636874 (S.D.N.Y. Mar. 6, 2026)..........................................................................................................6

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268 (2d Cir. 2011)...............................5, 7

*Raney v. Allstate Ins. Co.*, 370 F.3d 1086 (11th Cir. 2004).........................................................15

*Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340 (11th Cir. 2016)........................................................14

*Reves v. Ernst & Young*, 507 U.S. 170 (1993)...............................................................................12

*RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325 (2016) .......................................................15

*Rosh Chodesh II Ltd. P'ship v. Wimpfheimer*, No. 23-CIV-22148, 2025 WL 641300 (S.D. Fla. Feb. 4, 2025).......................................................................................................8

*Rubinstein v. Keshet Inter Vivos Tr.*, No. 17-CIV-61019, 2018 WL 8899231 (S.D. Fla. Oct. 29, 2018) ......................................................................................................10

*Rupp v. Schon*, 608 So. 2d 934 (Fla. 4th DCA 1992) ...................................................................16

*Saveljic v. Baytarian*, No. 25-CIV-20559, 2025 WL 1472758 (S.D. Fla. May 22, 2025) .................................................................................................................................9

*Sensoria, LLC v. Kaweske*, 581 F. Supp. 3d 1243 (D. Colo. 2022).................................................6

*United States v. Bailey*, 288 F. Supp. 2d 1261 (M.D. Fla. 2003), aff'd, 419 F.3d 1208 (11th Cir. 2005)...................................................................................................................16

*United States v. Jones*, 29 F.3d 1549 (11th Cir. 1994) ...................................................................11

*Woods v. Michael*, No. 20-CIV-80651, 2021 WL 1055816 (S.D. Fla. Feb. 10, 2021), aff'd, 2021 WL 3355459 (11th Cir. Aug. 3, 2021).............................................................8

*World Class Yachts, Inc. v. Murphy*, 731 So. 2d 798 (Fla. 4th DCA 1999)..................................17

*Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861 (11th Cir. 2023)................................................4

**Statutes**

18 U.S.C. § 1957.................................................................................................................*passim*

18 U.S.C. § 1962..........................................................................................................3, 5, 11, 13

18 U.S.C. § 1964(c) ........ *passim*

18 U.S.C. § 1965 ........ 16

Fla. Stat. ch. 726 ........ 3

Fla. Stat. §§ 726.105–.106 ........ 17

**Rules**

Fed. R. Civ. P. 8 ........ 4, 10

Fed. R. Civ. P. 9(b) ........ 9, 10

Fed. R. Civ. P. 12(b)(2) ........ 16

S.D. Fla. L.R. 7.1(b)(2) ........ 18

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

## I. INTRODUCTION

This is Plaintiffs' fourth complaint. The Magistrate Judge recommended that the RICO claims in the Second Amended Complaint ("SAC") be dismissed with prejudice on two independent grounds. The District Court adopted the Report and Recommendation, but granted leave to amend. (DE 285.) The first ground was that the claims "rely on conduct that would have been actionable as fraud in connection with the purchase or sale of securities," so the Court deemed them barred by 18 U.S.C. § 1964(c). (DE 282 at 22.) The second ground was that, even apart from that bar, the SAC did not plead a pattern of racketeering, an enterprise, or a conspiracy. (DE 282 at 22–34.) The Court was explicit that Plaintiffs "cannot avoid the securities bar by characterizing Defendants' conduct as mail fraud or wire fraud," because "[t]he Court must look to the substance of the alleged misconduct rather than labels attached to the predicate acts." (DE 282 at 21.)

The TAC does exactly what the Court said Plaintiffs could not do. It describes the same OmegaPro scheme, the same investors, the same money, and the same Moving Defendants, and changes only the label. The payments the SAC called recruiting bonuses, speaking fees, and "brand monetization" are now called "criminally derived property." The Moving Defendants the SAC called "promoters," "coaches," and "endorsers" are now called "Transacting Defendants." The predicate is now 18 U.S.C. § 1957 instead of wire fraud. (TAC ¶¶ 2–5, 16, 45.) But a § 1957 violation cannot exist without "specified unlawful activity," and Plaintiffs identify that activity as the very investor-facing wire fraud this Court already held to be securities fraud. (*Id.* ¶¶ 3, 40, 78.) Plaintiffs themselves concede that a RICO claimant "may not avoid § 1964(c) merely by relabeling conduct that itself would be actionable as securities fraud." (TAC ¶ 5.) Relabeling is all the TAC does.

The TAC also fails on the pleading requirements the Court already applied. It does not identify a single monetary transaction by any Moving Defendant: no date, no amount, no account, no financial institution, no payor, and no payee. Instead, the TAC repeats one sentence, nearly word for word, for each of Mr. Worre, Mrs. Worre, Mr. Belfort, Mr. Story and Mr. Maxwell: that upon information and belief, each conducted "monetary transactions in those proceeds through financial institutions" in amounts exceeding $10,000, each a separate § 1957 predicate act committed with knowledge of the proceeds' criminal origin. (TAC ¶¶ 61, 63–65; *see id.* ¶ 62.) The Court has already held that money-laundering predicates require "more than conclusory labels"

and must identify a "specific transaction by any Moving Defendant [and] the unlawful proceeds involved." (DE 282 at 27–28.) The TAC does neither.

What remains is a theory that anyone paid to speak at, coach for, or appear at an OmegaPro event became a money launderer when he or she deposited the fee. As to Mr. Reynoso, the TAC adds only an indictment—an accusation, not proof—and a single undated, unquantified "offloading" of bitcoin that is not alleged to have passed by, through, or to any identified financial institution. That theory fails under § 1964(c), under § 1957, and under RICO's enterprise, pattern, and proximate-cause requirements. The RICO counts (Counts I and II) should be dismissed with prejudice. The Court should then decline, as it did before, to exercise supplemental jurisdiction over the state-law counts (Counts III–VI), which in any event fail to state a claim.

## II. PROCEDURAL HISTORY

Plaintiffs filed their original Complaint on August 31, 2024, asserting twenty-six causes of action (DE 1). They amended on February 13, 2025 (DE 127). They amended again on September 18, 2025, after the Moving Defendants' motion to dismiss the First Amended Complaint had been fully briefed and argued (DE 240). The Moving Defendants moved to dismiss the SAC (DE 250), and the Court heard argument on June 11, 2026 (DE 278).

On July 30, 2026, Magistrate Judge D'Angelo recommended that Counts I through IV (the federal RICO counts) be dismissed with prejudice and that the Court decline supplemental jurisdiction over the remaining state-law counts (DE 282). The recommendation rested on three holdings:

- The OmegaPro investments are "investment contracts" and therefore securities (*id.* at 11–19).
- The scheme alleged, "[v]iewed as a whole," is securities fraud, including the continuing conduct "undertaken to keep a securities fraud Ponzi scheme alive" (*id.* at 19–22).
- Independently, Plaintiffs failed to plead predicate acts (including money laundering), a pattern, an enterprise, or a conspiracy (*id.* at 22–34).

On September 1, 2026, the District Court adopted the Report and Recommendation but granted Plaintiffs leave to amend (DE 285). Plaintiffs filed the TAC on September 25, 2026 (DE 289).

## III. THE THIRD AMENDED COMPLAINT

The TAC drops eighteen of the SAC's twenty-four counts. It asserts six counts against "All Active Defendants":

- RICO under 18 U.S.C. § 1962(c) (Count I);
- RICO conspiracy under § 1962(d) (Count II);
- unjust enrichment (Count III);
- conversion (Count IV);
- civil conspiracy (Count V); and
- fraudulent transfer under Fla. Stat. ch. 726 (Count VI).

(TAC ¶¶ 75–98.)

The underlying story has not changed. The TAC alleges that OmegaPro solicited cryptocurrency from investors on promises of 15% monthly returns and 200–300% returns within 13 to 16 months. (*Id*. ¶ 42.) It conducted "virtually no genuine trading." (*Id*. ¶ 43.) It paid "returns" and "a 10% direct referral 'bonus'" out of new investors' money. (*Id.* ¶ 44.) What is new is the label. The TAC asserts that these recruitment payments, "together with the 'ROI' and 'performance' distributions and the promotional, event, speaking, and ambassador compensation paid to the Transacting Defendants," are "criminally derived property." It further asserts that each later deposit, transfer, or withdrawal of those payments over $10,000 was a § 1957 predicate act. (*Id.* ¶¶ 45–46.)

The TAC tries to fence off the Court's prior ruling. It says Plaintiffs "do not allege any investor's purchase, investment, transmission of funds, or any misrepresentation inducing such transaction as a RICO predicate act" (*id.* ¶ 4). It "recognize[s]" that a RICO claimant "may not avoid § 1964(c) merely by relabeling conduct that itself would be actionable as securities fraud" (*id.* ¶ 5). And it describes the OmegaPro fraud as mere "background" (*id.* ¶ 41).

As to the Moving Defendants, the TAC abandons every misrepresentation it previously attributed to them. It now alleges only that:

- Mr. Worre received "referral and recruitment proceeds" and "event, speaking, and training compensation" (*id.* ¶¶ 20, 62);
- Mrs. Worre received "event revenues and promotional compensation" (*id.* ¶¶ 21, 63);
- Mr. Belfort received "promotional and endorsement compensation" (*id.* ¶¶ 23, 64);

- Mr. Maxwell received "event, training, and ambassador compensation" (*id.* ¶¶ 24, 65);
- Mr. Story "directed [the] laundering" of proceeds through SAEG Capital Management, which the TAC concedes is a Receivership Defendant whose claims are stayed (*id.* ¶¶ 22, 32, 61); and
- Mr. Reynoso received "referral, override, and leadership compensation," is associated with a bitcoin wallet that the government sought to seize, and, upon information and belief, "offload[ed]" bitcoin after service of a seizure warrant (*id.* ¶¶ 19, 38, 60).

For each, the TAC adds, "upon information and belief," that he or she conducted unspecified "monetary transactions" over $10,000 "through financial institutions." (*Id.* ¶¶ 60–65.)

## IV. ARGUMENT

The legal standards governing this Motion are set out in the Report and Recommendation. (DE 282 at 6–8 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 875 (11th Cir. 2023); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010)).) Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

### A. Section 1964(c) Still Bars Plaintiffs' RICO Claims.

#### 1. The Court has already decided that the OmegaPro scheme is securities fraud.

The Court held that the transactions between Plaintiffs and OmegaPro "constitute investment contracts and are therefore securities." (DE 282 at 19.) It also held that the scheme alleged, "[v]iewed as a whole," consisted of inducing investors "to provide cryptocurrency assets based on misrepresentations" and then "perpetuat[ing] the same investment scheme" to "facilitate new investments." (*Id.* at 22.) The recruitment component of the scheme was part of that securities fraud, not an exception to it. The Court found that "the recruitment feature here does not transform the alleged investment relationship into something other than an investment contract…" (*Id.* at 19.) The Court also found that conduct keeping a scheme "alive," including "attracting investors to the Ponzi scheme," falls within the bar. (*Id.* at 12 (quoting *Chelder v. Gen. Conf. Corp.*, No. 25-CIV-4313, 2026 WL 696903, at *4 (S.D.N.Y. Mar. 12, 2026)). The TAC does not dispute any of

this. It alleges the same scheme (TAC ¶¶ 1, 42–45) and concedes that the § 1964(c) analysis turns on whether its new predicates are anything more than a relabeling of that conduct (*id.* ¶ 5).

**2. Every § 1957 predicate in the TAC "relies upon" the securities fraud.**

Section 1964(c) provides that "no person may rely upon *any conduct* that would have been actionable as fraud in the purchase or sale of securities *to establish a violation of section 1962*." 18 U.S.C. § 1964(c) (emphasis added). The bar is not limited to predicates labeled "securities fraud." It reaches any RICO theory whose proof depends on conduct that would have been actionable as securities fraud. *See Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1249 (11th Cir. 2016) ("A plaintiff may not dodge this bar by pleading other offenses as predicate acts in a civil RICO action if the claim is based on conduct that would have been actionable as securities fraud."). Courts apply the bar "broadly, regardless of whether the plaintiff explicitly relied upon securities fraud as a predicate act or even had standing to pursue a securities fraud claim." *Licht v. Watson*, 567 F. App'x 689, 693 (11th Cir. 2014). The inquiry is conduct-based; it does not depend on whether the particular defendant could be sued for securities fraud. *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 274–77 (2d Cir. 2011); *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 329–30 (3d Cir. 1999).

A § 1957 predicate cannot be established without proving the underlying crime. Section 1957 reaches only a "monetary transaction in criminally derived property" that "is derived from specified unlawful activity." 18 U.S.C. § 1957(a). "Criminally derived property" means "property constituting, or derived from, proceeds obtained from a criminal offense." *Id.* § 1957(f)(2). The TAC names the criminal offense. The "specified unlawful activity" is "wire fraud and money laundering." Specifically, it is the OmegaPro scheme to obtain money by materially false statements—including promises of extraordinary returns and misrepresentations of licensure. (TAC ¶¶ 3, 37, 40, 78.) That is the same investor-facing fraud this Court held to be securities fraud. (DE 282 at 19–22.) The TAC's own "proceeds" theory confirms the point. The property is "criminally derived" only because it is "investor principal" obtained through that fraud. (TAC ¶ 45.) To prove any element of any § 1957 predicate, Plaintiffs must first prove the securities fraud. They therefore "rely upon" that conduct "to establish" the § 1962 violation, which is exactly what § 1964(c) forbids. *See Champion v. Homa*, No. 3:03-CV-275-MEF, 2008 WL 900967, at *14 (M.D. Ala. Mar. 31, 2008) (holding that mail fraud, wire fraud, and money laundering allegations

that were intrinsically connected to the plaintiffs' securities fraud claims could not serve as RICO predicate acts).

Plaintiffs' new effort mirrors arguments that other courts have rejected under the securities-fraud bar. In *Sensoria, LLC v. Kaweske*, 581 F. Supp. 3d 1243 (D. Colo. 2022), the plaintiffs sought to separate the defendants' conduct in (1) inducing them to buy shares from the defendants' later conduct in (2) converting the investment entity's assets, which allegedly deprived the plaintiffs of their investment principal, of the profits the business would have earned had it been managed properly, and of the assets that protected their equity interest. The plaintiffs argued that the later acts of conversion were distinct from the stock sale and therefore outside the PSLRA bar. The *Sensoria* court rejected that argument:

> The [complaint] portrays a unified fraud scheme. The sequence of events makes it difficult to separate Defendants' alleged actions regarding the sale of Clover Top Holdings, Inc. stock from their alleged actions that harmed the value of the business. That degree of interrelatedness and the PSLRA bar's broad scope warrant applying the bar to Plaintiffs' RICO claims. Because Plaintiffs could—and actually do—allege violations of the securities laws on the same facts, the PSLRA bar prevents them from framing them as RICO violations as well.

*Id.* at 1269.

Other courts have reached the same conclusion. *See Mansour v. Morgan Stanley*, No. 25-CV-7633 (CM), 2026 WL 636874, at *6 (S.D.N.Y. Mar. 6, 2026) ("Repackaging the same conduct and styling it as 'money laundering' does not remove it from the ambit of § 1964(c)."); *EIG Energy Fund XIV, L.P. v. Keppel Offshore & Marine Ltd.*, No. 18 Civ. 1047 (PGG), 2020 WL 2319127, at *9 (S.D.N.Y. May 11, 2020) (holding that the PSLRA bar applied to the wire fraud predicates and that, because the wire fraud, Travel Act, and money laundering predicates were all part of the same claim, the entire RICO conspiracy claim was barred); *Awad v. Omar*, No. 18 Civ. 10810 (NRB), 2019 WL 5727327, at *5 (S.D.N.Y. Nov. 5, 2019) ("The [PSLRA bar] bars plaintiffs' RICO claim, and does so regardless of whether the other predicate acts that plaintiffs allege are based on conduct that is not actionable as securities fraud."); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 730 (S.D.N.Y. 2013) ("where plaintiffs allege 'a single scheme,' courts have held that 'if any predicate act is barred by the PSLRA it is fatal to the entire RICO claim.'") (citation omitted), *vacated in part on other grounds sub nom. Gelboim v. Bank of Am. Corp.*, 823 F.3d 759 (2d Cir. 2016).

The securities-bar analysis also exposes a gap in the TAC's wire fraud allegations. Plaintiffs assert that they "do not allege in this Complaint that the Defendants committed fraud in the purchase or sale of securities as a RICO predicate act" (TAC ¶ 41). Yet the TAC names wire fraud as the "specified unlawful activity" from which every allegedly laundered dollar derives (TAC ¶¶ 3, 40, 78), and the only wire fraud it describes is the investor-facing scheme to sell the OmegaPro investments, the very conduct this Court has held to be securities fraud. (DE 282 at 19–22.)

Plaintiffs cannot retreat from those wire fraud allegations. A RICO claim requires a pattern of racketeering activity that includes at least two predicate acts, *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020), and the only predicates the TAC pleads are § 1957 transactions that exist only if the proceeds derive from that wire fraud. Without the securities fraud, there is no specified unlawful activity, no criminally derived property, and no predicate act.

*Dusek* likewise forecloses the TAC's attempt to separate the "financial back-end" of the scheme from its "investor-facing solicitation" (TAC ¶ 69). The *Dusek* plaintiffs sued Madoff's bank. They alleged not that the bank sold them securities, but that it invested in Madoff feeder funds and failed to report suspicious banking activity, in other words the bank's own later handling of the scheme's money. The Eleventh Circuit held the claims barred because they were "clearly based upon the fraudulent conduct of Madoff and BLMIS relating to securities investments." *Dusek*, 832 F.3d at 1249. *MLSMK* and *Bald Eagle* reached the same result for claims against banks that handled Ponzi-scheme money. 651 F.3d at 274; 189 F.3d at 329–30. A banker's handling of a Ponzi schemer's money is further removed from the securities fraud than a promoter's receipt of recruitment commissions and event fees. If the former is barred, the latter is barred too.

The point is even clearer as to Mr. Reynoso. The TAC alleges that he served as OmegaPro's Latin America manager and as Go Global's Chief Sales Officer, and that what he received was "referral, override, and leadership compensation." (TAC ¶¶ 19, 60.) That is, by Plaintiffs' own account, compensation for selling the very investment contracts this Court has held to be securities. (DE 282 at 19.) The TAC itself places that sales function on the "investor-facing" side of the line it draws, outside the "financial back-end" it calls the Enterprise. (TAC ¶ 69.) A theory that treats a sales officer's sales compensation as the "criminally derived property" at the heart of each predicate cannot be proved without proving the sales fraud, and § 1964(c) forbids exactly that.

The TAC's reliance on timing does not change the result. Plaintiffs argue that the § 1957 transactions are "analytically and temporally distinct" because they occurred after the proceeds were generated. (TAC ¶¶ 4, 80.) But the Court has already held that "[t]he timing of those statements does not remove them from the alleged securities-fraud scheme." (DE 282 at 21.) The fraud must be assessed "as a whole." (*Id.* at 20 (quoting *Rosh Chodesh II Ltd. P'ship v. Wimpfheimer*, No. 23-CIV-22148, 2025 WL 641300, at *4 (S.D. Fla. Feb. 4, 2025)).)

The payments the TAC now calls "criminally derived property" are the scheme's own operating mechanism:

- the "10% direct referral 'bonus' on every dollar transmitted by their downlines" (TAC ¶ 44);
- the ROI "distributions" to investors (*id.* ¶ 45); and
- compensation to promoters who drew investors in (*id.* ¶¶ 20–24).

These payments are how a Ponzi scheme "attract[s] investors" and keeps itself "alive." (DE 282 at 12.)

*D'Addario v. D'Addario*, 75 F.4th 86 (2d Cir. 2023), on which the TAC relies (TAC ¶¶ 5, 80), confirms that the bar applies here. In *D'Addario*, the alleged scheme was the looting of a decades-old probate estate, and securities were at most "an incidental feature of an overall scheme." The Second Circuit held that the bar applies where "the actual purchase or sale of securities was fraudulent…." *Id.* at 93–94. Here, the Court has already held that the "actual purchase" was the fraud. (DE 282 at 19–22.) The only victims the TAC identifies are the persons who "transmitted cryptocurrency, money, or property to OmegaPro or Go Global," meaning the purchasers of the securities (TAC ¶ 72). The only property at issue is those purchasers' "investor principal" (*id.* ¶ 45). The securities fraud is not incidental to the TAC. It is the source of every dollar the TAC claims was laundered.

**3. The RICO conspiracy claim is barred for the same reason.**

"When section 107 of the PSLRA precludes a plaintiff's RICO claims, it likewise precludes any corresponding RICO conspiracy claims." *Woods v. Michael*, No. 20-CIV-80651, 2021 WL 1055816, at *3 (S.D. Fla. Feb. 10, 2021), *aff'd*, 2021 WL 3355459 (11th Cir. Aug. 3, 2021); (DE 282 at 33–34). Count II is barred along with Count I.

### B. The TAC Does Not Plead a § 1957 Predicate Act by Any Moving Defendant.

Even if § 1964(c) did not apply, Counts I and II fail because the TAC does not plead a single § 1957 violation by any Moving Defendant. The Court has already explained what is required. A money-laundering predicate "demands more than conclusory labels." It requires facts identifying a "specific transaction by [the] Moving Defendant [and] the unlawful proceeds involved," along with the required knowledge. (DE 282 at 27–28 (quoting *Saveljic v. Baytarian*, No. 25-CIV-20559, 2025 WL 1472758, at *5 (S.D. Fla. May 22, 2025)).) Although, as discussed below the TAC must satisfy Rule 9(b), *Saveljic* applied this requirement while noting that at least one court in this District has held that money laundering, unlike mail or wire fraud, need not be pleaded with particularity. *See Saveljic*, 2025 WL 1472758, at *4 n.2, *5. Under § 1957, Plaintiffs must plead facts showing that each Moving Defendant:

(1) knowingly engaged in a "monetary transaction," that is, a deposit, withdrawal, transfer, or exchange "by, through, or to a financial institution";

(2) in property of a value greater than $10,000;

(3) that was "criminally derived" from specified unlawful activity;

(4) knowing that the property was criminally derived; and

(5) in the United States or as a United States person.

18 U.S.C. § 1957(a), (d), (f).

#### 1. The TAC identifies no transaction.

The TAC does not identify one monetary transaction by any Moving Defendant. It gives no date, no amount, no account, no bank or exchange, no counterparty, and no description of what was deposited, transferred, or withdrawn. The allegations for Mrs. Worre, Mr. Belfort, Mr. Story[3] and Mr. Maxwell are interchangeable. Each "received criminally derived proceeds" in the form of event, promotional, or training compensation funded from investor principal, and upon information and belief each conducted monetary transactions in those proceeds through financial institutions in amounts exceeding $10,000, each a separate § 1957 predicate act committed with knowledge of the proceeds' criminal origin. (TAC ¶¶ 61, 63–65.) The paragraph for Mr. Worre

[3] While for purposes of this Motion to Dismiss the allegations in the TAC are accepted as true, Mr. Story denies ever having participated in any promotional or speaking engagement related to OmegaPro or any other entities at issue in the TAC.

adds only a generic list of transaction types: "deposits, transfers, conversions of cryptocurrency to fiat, and asset acquisitions" (*id.* ¶ 62). Swapping one defendant's name for another's in the same sentence is not a defendant-specific allegation. It is the group pleading the Court rejected. (DE 282 at 25–26 (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997)).)

The allegations against Mr. Reynoso are no more specific. Paragraph 60 alleges, upon information and belief, "repeated monetary transactions in criminally derived proceeds through financial institutions, each exceeding $10,000," without a single date, amount, account, institution, or counterparty. (TAC ¶ 60.) The only concrete event the TAC mentions, the alleged "offloading" of bitcoin after a seizure warrant issued in another proceeding (*id.* ¶¶ 38, 60), does not fill that gap. The TAC does not say how much bitcoin was moved, when, to whom, or by what means. Nor does it identify any financial institution "by, through, or to" which the movement occurred, an element of every § 1957 offense. 18 U.S.C. § 1957(f)(1). A transfer of bitcoin from one wallet to another is not, without more, a transaction through a financial institution, and the TAC alleges nothing more. Its generic list of exchanges that investors used (TAC ¶ 48) is not tied to any transaction by Mr. Reynoso. And the TAC cannot settle on Mr. Reynoso's relationship to the wallet: it describes the wallet as merely "associated with" him in two paragraphs (*id.* ¶¶ 19, 38) and as one he "controlled" in a third (*id.* ¶ 60).

**2. Rule 9(b) applies, and the TAC does not satisfy even Rule 8.**

Plaintiffs chose wire fraud as the "specified unlawful activity" on which every predicate depends (TAC ¶¶ 3, 78). A money-laundering predicate built on a fraud must be pleaded with particularity. *See* DE 282 at 23–24 n.3 (collecting cases, including *Ageloff v. Kiley*, 318 F. Supp. 2d 1157, 1159 (S.D. Fla. 2004), and *Rubinstein v. Keshet Inter Vivos Tr.*, No. 17-CIV-61019, 2018 WL 8899231, at *4 (S.D. Fla. Oct. 29, 2018)). The Court need not decide the point, however. Allegations that a defendant conducted unspecified transactions, on unspecified dates, in unspecified amounts, through unspecified institutions do not satisfy Rule 8 either. *Iqbal*, 556 U.S. at 678.

**3. The TAC does not plausibly allege that any Moving Defendant knew the property was criminally derived.**

Section 1957 requires a *knowing* transaction in property the defendant knows to be criminally derived. 18 U.S.C. § 1957(a), (c). The TAC disclaims "a collective or imputed knowledge theory." It promises instead that knowledge will be "alleged from the circumstances applicable to the particular Defendant, including that Defendant's role, access to the proceeds-distribution mechanics, compensation structure, timing of transactions, control of wallets or entities, and conduct after the scheme's collapse" (TAC ¶ 52). The defendant-specific paragraphs never deliver on that promise. Each ends with the same conclusory phrase, "with knowledge of the proceeds' criminal origin" (*id.* ¶¶ 60–65), and nothing more.

Being paid a speaking, coaching, or appearance fee by a company later accused of fraud does not plausibly show that the recipient knew the fee was the proceeds of crime. The TAC itself concedes that "[m]ere receipt of compensation" and "endorsement of OmegaPro" do not suffice (*id.* ¶¶ 71, 84).

As to Mr. Reynoso, Plaintiffs offer his indictment and the related seizure and contempt proceedings. (TAC ¶¶ 19, 36–38, 57.) But the TAC pleads only what the indictment "alleges" (*id.* ¶ 37), and an indictment is an accusation, not a fact the Court may accept as true. The Court may take notice of filings in another case only for the fact of the judicial act they represent, not for the truth of the matters asserted in them. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). Plaintiffs also concede that those proceedings bear only on transactions occurring after the relevant Defendant became aware of them. (TAC ¶ 57.) The TAC does not allege that any transaction involving Mr. Reynoso's "referral, override, and leadership compensation" (*id.* ¶ 60) occurred after the indictment, the seizure warrant, or the contempt order. For those transactions, the TAC offers only his title and the bare assertion that he "controlled wallets holding scheme proceeds" (*id.*), not a single fact showing what he knew or when. Plaintiffs themselves disclaim reliance "on status or title alone." (*Id.* ¶ 55.)

**C. The TAC Does Not Plead a § 1962(c) Enterprise or Any Moving Defendant's Operation or Management of One.**

**1. The "Proceeds-Distribution and Laundering Enterprise" is not an enterprise.**

An association-in-fact enterprise requires "(1) a 'purpose,' (2) 'relationships among those associated with the enterprise,' and (3) 'longevity sufficient to permit these associates to pursue

the enterprise's purpose.'" *Cisneros*, 972 F.3d at 1211 (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)); (DE 282 at 29–30). The TAC defines its enterprise by the alleged racketeering itself. It describes the enterprise as "the flow of criminally derived proceeds from OmegaPro-controlled wallets to the Transacting and Entity Defendants, and each Defendant's subsequent monetary transactions in those proceeds…" (TAC ¶ 69). Its only stated purpose is "receiving, distributing, moving, concealing, laundering, and transacting in" money (*id.* ¶ 68). "An abstract common purpose, such as a generally shared interest in making money, will not suffice." *Cisneros*, 972 F.3d at 1211. A group whose shared purpose is receiving money is exactly that.

The TAC also pleads no relationships connecting the Moving Defendants to one another or to the supposed back-end enterprise. The only relationships it identifies are "the principal-and-entity relationships between the Transacting Defendants and the Entity Defendants they owned and controlled…" (TAC ¶ 70(b)). No Entity Defendant is alleged to be owned or controlled by Mr. Worre, Mrs. Worre, Mr. Belfort, Mr. Maxwell, or Mr. Reynoso[4]. Payees who each received compensation from the same source do not become an enterprise "function[ing] as a continuing unit" without "a further circumstance pointing toward a meeting of the minds." *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1067–68 (11th Cir. 2017); (DE 282 at 30).

**2. The TAC concedes the operation-or-management requirement is not met.**

Section 1962(c) liability requires that each defendant "participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). The TAC concedes that "[m]ere receipt of compensation, endorsement of OmegaPro, or association with another Defendant, standing alone, is not alleged to satisfy the operation-or-management requirement" (TAC ¶ 71). Yet as to the Worres, Mr. Belfort, and Mr. Maxwell, receipt of compensation is the only conduct alleged (*id.* ¶¶ 20–21, 23–24, 62–65). The TAC does not allege that any of them directed the "movement and disposition of proceeds" or controlled any wallet, account, or entity (*see id.* ¶ 71). As the Court observed of the SAC, the allegations do not "plausibly

[4] As for Mr. Story, while the TAC alleges that Mr. Story is a principal of entity Defendant SAEG Capital Management (TAC ¶ 22), Mr. Story never had an ownership interest in SAEG Capital Management, nor has Mr. Story ever had access to or control over any funds related to or derived from the OMEGAPRO and GOGLOBAL schemes. While for purposes of this Motion to Dismiss the allegations in the TAC are accepted as true, Mr. Story strongly disputes this allegation.

show the role each Moving Defendant played in the alleged enterprise." (DE 282 at 30.) The same is true of the TAC.

Mr. Reynoso fares no differently. The TAC's only allegation of "control" as to him is that he "controlled wallets holding scheme proceeds." (TAC ¶ 60.) It does not allege whose proceeds, how they came to be there, or that he directed their movement on behalf of anyone but himself. Holding funds is not directing the affairs of an enterprise. The TAC does not allege that Mr. Reynoso owned or controlled any Entity Defendant, directed any other Defendant's transactions, or played any part in the alleged "pass-through and layering" among the entities. (*See id.* ¶¶ 27, 66, 70(b).) And his alleged roles as a regional manager and sales officer place him, by the TAC's own definition, on the "investor-facing" side of the scheme, outside the "financial back-end" Enterprise Plaintiffs plead. (*Id.* ¶ 69.)

**D. The TAC Does Not Plead a Pattern of Racketeering Activity.**

Because the TAC does not identify any predicate act by any Moving Defendant, "the Court cannot determine whether any such acts were related to one another or whether they demonstrate the continuity required..." (DE 282 at 29.) The TAC's continuity allegations are also self-defeating. Open-ended continuity rests on the allegation that "many Defendants continue to hold, manage, and transact retained criminally derived proceeds" (TAC ¶ 79; *see id.* ¶ 70(c)). But holding money is not a "monetary transaction," which requires a "deposit, withdrawal, transfer, or exchange," 18 U.S.C. § 1957(f)(1). And no Moving Defendant is alleged to have "transact[ed]" anything after 2023 except the undated, unquantified "offloading" attributed to Mr. Reynoso (*id.* ¶ 60), which, as shown above, is not pleaded as a transaction through any identified financial institution. A single alleged event following the scheme's collapse, tied to a seizure warrant issued in a separate proceeding, is neither a "specific threat of repetition" nor evidence that predicate acts are "part of an ongoing entity's regular way of doing business." (DE 282 at 28 (citation omitted).)

**E. Plaintiffs Do Not Plead RICO Injury Caused "By Reason Of" Any § 1957 Transaction.**

A civil RICO plaintiff must plead injury to business or property "by reason of" the § 1962 violation. 18 U.S.C. § 1964(c); *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547

U.S. 451, 461 (2006); *accord Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1350 (11th Cir. 2016) (the connection between the racketeering and the injury "can be neither remote, purely contingent, nor indirect").

The TAC concedes that Plaintiffs cannot rely on their investment losses, which flowed from the securities fraud. It therefore invents a different injury, one "distinct from, and subsequent to, the initial loss": the "depletion and dissipation of traceable proceeds." According to the TAC, each § 1957 transaction placed money "farther beyond Plaintiffs' reach" and "impaired the value and collectability of Plaintiffs' property claims" (TAC ¶ 81). This theory fails for three reasons.

First, it is not direct. Plaintiffs lost their money when they transferred it to OmegaPro. A speaker's later deposit of an appearance fee into his own bank account did not take anything from Plaintiffs. At most, it affected Plaintiffs' prospects of collecting a judgment they do not have, from a pool of commingled funds (*id.* ¶ 81) that they do not own. That is the "remote, purely contingent, [and] indirect" harm RICO does not reach. *Ray*, 836 F.3d at 1350; *Anza*, 547 U.S. at 461.

Second, it is not ripe. The "collectability" of Plaintiffs' claims depends on proceedings that remain pending: the Traders Domain receivership, the criminal case against Mr. Sims and Mr. Reynoso, and related forfeiture proceedings (TAC ¶¶ 29–38). How much, if anything, Plaintiffs will fail to recover because of any Moving Defendant's transaction is unknowable until those proceedings conclude. RICO damages that depend on the outcome of other proceedings are not "clear and definite" and are not ripe. *See D'Addario v. D'Addario*, 901 F.3d 80, 95 (2d Cir. 2018) (RICO claim for diminished recovery from an open estate unripe because the amount of loss could not be determined with reasonable certainty).

This is especially so as to Mr. Reynoso. The only specific property the TAC associates with him, the 119.65 bitcoin, is the subject of the United States' seizure warrant and related proceedings. (TAC ¶¶ 19, 38.) Whether, and how much, any victim will recover from that property depends on the outcome of the forfeiture and criminal proceedings, not on anything this Court can now measure. And if the alleged "offloading" directly affected anyone, it was the government, whose seizure warrant the TAC says it concerned, not Plaintiffs, whose interest is at most a hope of later recovery through those proceedings. Where a more directly injured party exists, RICO's proximate-cause requirement is not met. *See Anza*, 547 U.S. at 460–61; *Holmes*, 503 U.S. at 269–70.

Third, the theory is inconsistent with the TAC's own description of the predicates. A § 1957 violation is complete when a knowing transaction over $10,000 occurs, whether or not money moves "beyond" anyone's reach. Most of the transactions the TAC describes are deposits into the recipient's own accounts (TAC ¶¶ 46, 49), and a deposit concentrates funds rather than dissipating them.[5]

## F. The RICO Conspiracy Claim (Count II) Fails.

"If the underlying cause of action is not viable, the conspiracy claim must also fail." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1269 (11th Cir. 2004); (DE 282 at 32–33). Count II also fails on its own terms. The TAC disclaims any inference of agreement from "a Defendant's promotion of OmegaPro, receipt of compensation, familial relationship, or association with another Defendant" (TAC ¶ 84). Those are the only facts alleged as to the Worres, Mr. Belfort, and Mr. Maxwell. The TAC then concedes it has no facts showing agreement: it withdraws the claim "[a]s to any Defendant for whom discovery does not establish facts supporting knowing agreement" (*id.* ¶ 85). A claim that depends on facts yet to be discovered has not been pleaded. *See Audette-Weaver v. J.G. Wentworth, S.S.C., L.P.*, No. 07-CIV-2056, 2008 WL 11336685, at *7 (M.D. Fla. Feb. 26, 2008) (plaintiff "must allege facts, not merely conclusions, showing that each defendant either agreed to the overall objective of the conspiracy or . . . agreed to commit at least two predicate acts"); (DE 282 at 33).

## G. The Court Should Again Decline Supplemental Jurisdiction, and Personal Jurisdiction Over the Worres and Mr. Story Falls With the RICO Claims.

The TAC invokes only federal-question jurisdiction over the RICO counts and supplemental jurisdiction over the state-law counts (TAC ¶¶ 8–9). It no longer alleges diversity jurisdiction and, as before, does not invoke the Class Action Fairness Act. (*See* DE 282 at 35 n.4.) Once the RICO counts are dismissed, "the dismissal of state law claims is strongly encouraged…" (DE 282 at 34 (citation omitted)); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004). The Court should decline supplemental jurisdiction over Counts III through VI, as it did before. (DE 282 at 34–35.)

---

[5] The putative class consists of investors "worldwide" (TAC ¶ 1). To the extent Plaintiffs seek RICO recovery for class members outside the United States, "[s]ection 1964(c) requires a civil RICO plaintiff to allege and prove a domestic injury to business or property and does not allow recovery for foreign injuries." *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 354 (2016).

The only basis alleged for personal jurisdiction over the non-resident Worres and Mr. Story is RICO's nationwide-service provision, 18 U.S.C. § 1965(b) and (d) (TAC ¶ 10). That basis disappears with the RICO claims. The TAC's alternative allegations of "Florida contacts" (*id.* ¶ 11) describe the solicitation of Florida residents, a Florida entity (Algo Capital, a Receivership Defendant), and unspecified financial institutions "with a Florida nexus." None of those contacts is attributed to Mr. Worre, Mrs. Worre, or Mr. Story. Their declarations establish that they have no such contacts. (DE 250-1, 250-2, 250-3, incorporated herein by reference as though fully set forth.) The claims against them should be dismissed under Rule 12(b)(2) as well.

**H. Alternatively, Counts III Through VI Fail to State a Claim.**

**1. Unjust enrichment (Count III).**

Under Florida law, "to prevail on an unjust enrichment claim, the plaintiff must directly confer a benefit to the defendant." *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017). The TAC alleges the opposite. The benefit was conferred on OmegaPro and later "diverted to the Defendants" (TAC ¶ 88). No Plaintiff is alleged to have paid anything to any Moving Defendant, and the TAC does not allege what, or how much, any Moving Defendant received.

**2. Conversion (Count IV).**

To establish conversion of money under Florida law, a plaintiff must show: (1) specific and identifiable money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so. *United States v. Bailey*, 288 F. Supp. 2d 1261, 1264 (M.D. Fla. 2003), aff'd, 419 F.3d 1208 (11th Cir. 2005). "[A]n action for conversion of money can only be maintained where the money at issue has been kept separate." *Rupp v. Schon*, 608 So. 2d 934, 935 (Fla. 4th DCA 1992). The TAC pleads the opposite of segregation. It alleges a commingled "pool of investor principal" held in OmegaPro wallets, to be traced "on a pro rata basis where investor funds were commingled" (TAC ¶¶ 81, 91). It alleges no specific funds of any Plaintiff in any Moving Defendant's possession, and no demand or refusal. The bitcoin wallet the TAC associates with Mr. Reynoso does not change this: the TAC does not allege that any Plaintiff's funds, as opposed to commingled "scheme proceeds," were ever in that wallet. (TAC ¶¶ 19, 38, 60.)

**3. Civil conspiracy (Count V).**

A civil conspiracy claim requires an actionable underlying tort, and "[g]eneral allegations of conspiracy are inadequate." *World Class Yachts, Inc. v. Murphy*, 731 So. 2d 798, 799 (Fla. 4th DCA 1999). Count V alleges an agreement "from the same Defendant-specific coordinated conduct described in paragraphs 68 through 71 and 84 through 85" (TAC ¶ 94). As shown above, those paragraphs allege no facts showing any agreement by any Moving Defendant, and paragraph 85 disclaims one absent future discovery.

**4. Fraudulent transfer (Count VI).**

A claim under Florida's Uniform Fraudulent Transfer Act requires a transfer by a debtor. Fla. Stat. §§ 726.105–.106. Count VI does not identify any debtor, any transfer, any transferee, any date, or any asset. It says only that Plaintiffs "challenge only transfers for which discovery establishes the statutory elements" and "will identify the transferor, transferee, date, asset, value, and applicable statutory theory for each challenged transfer" after discovery (TAC ¶ 97). That is an admission that no claim has been stated. And to the extent Count VI seeks to hold any Moving Defendant liable as a participant in transfers to others, FUFTA "was not intended to serve as a vehicle by which a creditor may bring a suit against a non-transferee party (like First Union in this case) for monetary damages arising from the non-transferee party's alleged aiding-abetting of a fraudulent money transfer." *Freeman v. First Union Nat'l Bank*, 865 So. 2d 1272, 1277 (Fla. 2004).

**I. Dismissal Should Be With Prejudice.**

Plaintiffs have now filed four complaints. They have had the benefit of two fully briefed motions to dismiss, two hearings, and a 38-page Report and Recommendation that explained exactly why their RICO claims fail. The TAC does not add facts. It adds labels. Because "the PSLRA bars this type of securities fraud from serving as a predicate act for RICO," further amendment "would be futile." *Licht*, 567 F. App'x at 694; (DE 282 at 22). A district court need not grant leave to amend where a counseled plaintiff has repeatedly failed to cure deficiencies. *See Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356–58 (11th Cir. 2018). Counts I and II should be dismissed with prejudice. Counts III through VI should be dismissed for lack of supplemental jurisdiction or, alternatively, with prejudice for failure to state a claim.

## V. REQUEST FOR HEARING

Under S.D. Fla. L.R. 7.1(b)(2), the Moving Defendants request a hearing of approximately 1 hour. The TAC presents a new RICO theory (a § 1957-only predicate designed to avoid the § 1964(c) bar) that interacts with the Court's prior ruling. The Moving Defendants believe argument will assist the Court, as it did at the June 11, 2026 hearing.

## VI. CONCLUSION

For these reasons, the Moving Defendants respectfully request that the Court dismiss Counts I and II of the Third Amended Complaint with prejudice; decline to exercise supplemental jurisdiction over Counts III through VI or, alternatively, dismiss those counts with prejudice; dismiss the claims against Eric Worre, Marina Worre, and Francisco Story for lack of personal jurisdiction; and grant such further relief as the Court deems just.

DATED this 8th day of October, 2026.

Respectfully submitted,

/s/ Robert Z. DeMarco

Robert Z. DeMarco (FBN 99378)
Richard A. Schonfeld (Pro Hac Vice)
CHESNOFF & SCHONFELD
520 S. 4th Street
Las Vegas, Nevada 89101
Tel/Fax: 702-384-5563
rschonfeld@cslawoffice.net
rdemarco@cslawoffice.net
Attorneys for Specially Appearing Defendants
Eric Worre and Marina Worre

/s/ Nickolas C. Sessions

Jake Taylor (FBN 0520896)
Keith M. Woodwell (Pro Hac Vice)
Nickolas C. Sessions (Pro Hac Vice)
CLYDE SNOW & SESSIONS
201 South Main Street, Suite 2200
Salt Lake City, Utah 84111
Tel/Fax: 801-322-2516
Attorneys for Specially Appearing Defendant
Francisco Story

/s/ Eric W. Ostroff
Eric W. Ostroff, Esq. (FBN 10130)
Shira A. Baratz, Esq. (FBN 1050560)
MELAND BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6363
Attorneys for Defendant John C. Maxwell

/s/ Lee Stapleton
Lee Stapleton (FBN 356778)
lstapleton@carltonfields.com
CARLTON FIELDS, P.A.
700 NW 1st Avenue, Suite 1200
Miami, Florida 33136
Telephone: (305) 530-0050

Ellyn S. Garofalo (Pro Hac Vice)
egarofalo@ftllp.com
LINER FREEDMAN TAITELMAN + COOLEY, LLP
1801 Century Park West, 5th Floor
Los Angeles, California 90067
Telephone: (310) 201-0005
Attorneys for Defendant Jordan Ross Belfort

/s/ George S. Savage
George S. Savage, Esq.
Florida Bar No. 051772
THE SAVAGE LAW GROUP, P.A.
2030 South Douglas Road, Suite 214
Coral Gables, Florida 33134
Telephone: (305) 577-0000
gss@savagelaw.net
Attorney for Defendant Juan Carlos Reynoso, Sr.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 8th, 2026, a true and correct copy of the foregoing was filed with the Clerk of Court using CM/ECF, which will serve all counsel of record registered to receive electronic service.

/s/ Robert Z. DeMarco
Robert Z. DeMarco (FBN 99378)
Richard A. Schonfeld (Pro Hac Vice)
CHESNOFF & SCHONFELD
520 S. 4th Street
Las Vegas, Nevada 89101
Tel/Fax: 702-384-5563
rschonfeld@cslawoffice.net
rdemarco@cslawoffice.net
Attorneys for Specially Appearing Defendants
Eric Worre and Marina Worre